[L. A. No. 3809.    Department Two.—June 4, 1917.]

## G. R. GIBSON, Respondent, v. O. O. McREYNOLDS et al., Appellants.

ACCOUNTING — AGREEMENT FOR LOCATION OF MINERAL LANDS — ACTION BASED ON CONTRACT.—An agreement between several associates for the location of mineral lands, and for a division of the expenses connected therewith and of the proceeds of sales of the locations made, creates a relation between the parties in the nature of a partnership, and an action by one of such associates for an accounting of such proceeds is based upon an express contract.

ID.—SHARE OF PROCEEDS OF SALE—VARIANCE BETWEEN ALLEGATIONS AND PROOF.—The fact that the plaintiff in such action claimed to be entitled under the agreement to a greater proportion of the proceeds of sale than the court found did not produce a variance between the allegations and the proof so as to require a reversal of the judgment.

ID.—TRIAL UPON ISSUES—IMMATERIAL VARIANCE.—Where a trial of such action was had upon the issues arising out of the contractual relations of the parties, and whether the contract sued on was an express or an implied one, the defendants were not injured by any variance between the plaintiff's averment and the proof as to the extent of his interest.

ID.—EVIDENCE—ADMISSION OF COPY OF DOCUMENT—ABSENCE OF PROPER OBJECTION—APPEAL.—An objection to the admission in evidence of a copy of a document, without proof of the loss of the original or

accounting in any way for its nonproduction, will not be considered on appeal, when no such objection was made at the trial.

ID.—CONVERSATION ADMISSIBLE AGAINST ONE DEFENDANT.—Where a conversation testified to was admissible in evidence against one of two defendants, the fact that the court, in admitting the evidence, failed to declare the intention of limiting the effect of the testimony to the defendant against whom it was admissible is not ground for reversal.

APPEAL from a judgment of the Superior Court of Kern County, and from an order refusing a new trial. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

John W. Kemp, and George E. Whitaker, for Appellants.

Frank H. Short, and E. L. Foster, for Respondent.

MELVIN, J.—Defendants appeal from the judgment and from an order denying their motion for a new trial.

By his pleading G. R. Gibson alleged that he and the defendants had entered into "a special agreement whereby the plaintiff was to have a certain interest equivalent to that of defendants in certain placer mining claims to be located upon unappropriated government land, under the laws of the United States in the county of Kern"; that thereafter, in pursuance of the agreement, defendants and their wives with J. A. Stroud, G. W. Derby, and their wives and the plaintiff made mineral locations upon certain lands designated as follows: "Sections 14, 12, 4, 8, 26 and the NE. ¼, NW. ¼, and the SE. ¼ of section 2, and the NW. ¼, SW. ¼ and SE. ¼ of section 24, all in township 32 South, Range 24 East, M. D. M."; that thereafter plaintiff conveyed to defendant O. O. McReynolds all his right, title, and interest in the said locations, so that the said McReynolds might conduct negotiations for disposing of the property; that plaintiff paid his proportion of the expenses of location, recording, and assessment work and such other amounts as were demanded by defendants for holding the mining claims; and that all of the other locators conveyed to McReynolds their interests for the better carrying on of the selling or otherwise disposing of the properties. Then follow allegations regarding a sale of 920 acres of the land. It is alleged that McReynolds stated in

writing to plaintiff that the latter's proportion of the 920 acres was 80 acres. Then follow averments that Parker Barrett offered plaintiff $550 as his share of the amount paid on account of the sale; that plaintiff refused to accept Barrett's check for that amount; that Barrett and McReynolds had received four thousand dollars in cash and four thousand dollars in notes of the vendee for plaintiff's 80 acres; and that plaintiff had sent $75 to Barrett as balance due on his proportion of the expense connected with the holding of the property, but that Barrett had refused to accept it. Judgment was demanded that defendants be declared trustees and that defendant, McReynolds, be required to pay plaintiff four thousand dollars; to transfer to him four thousand dollars in the notes of the Lakeview Oil Company of Midway, the vendee of the 920 acres; to assign to him his proportion of the agreement involving the remainder of the purchase price; and to transfer to said Gibson his share of the lands described in the proportion of 80 acres to 920 acres.

The gist of the defenses pleaded by the defendants McReynolds and Barrett is found in the amendments to their amended answers. Barrett avers, in the amendment to the amended answer, that in October, 1908, he and his wife, together with O. O. McReynolds, J. M. Dunn, and G. W. Derby and their wives, formed an association for the purpose of making locations on oil lands in Kern County; that they proceeded to make such locations; that while the locations were being made it was suggested that plaintiff might render assistance in the development and protection of the lands; that it was mutually agreed between Barrett and Gibson that the former would request his associates to place plaintiff's name on some of the claims being located in lieu of the name of Barrett's wife; that the request was made and granted; and that accordingly the name of plaintiff was placed upon five of the mineral location notices; that the total expense of locating and developing the lands was $930; and that it was agreed between Barrett and his associates, McReynolds, Derby, and Dunn, that plaintiff should be requested to pay one-sixth of such expenditure or $155. It is not alleged in any of the pleadings that plaintiff joined in said agreement or that he bound himself to pay one-sixth of the expenses. It is further averred that plaintiff contributed only the sum of $80 toward the payment of the sum of $155, and that

Barrett was compelled to pay the other $75 to his associates. The pleading also contained the averment that "the said plaintiff agreed with this defendant that his, said plaintiff's, interests in any proceeds obtained from the sale of the lands should be based upon the amount which said plaintiff had contributed toward the protection and development of the said lands and should be such percentage of 20 acres of the lands as included in the said five claims upon which the plaintiff's name appeared as a locator." Barrett further alleged that he paid to plaintiff $500, which was more than Gibson was entitled to receive from the proceeds of the sale of the option or twenty acres of the land, which was plaintiff's proportionate share. There is also an averment of a settlement between plaintiff and Barrett. As a separate defense Barrett pleads that Gibson had never paid any consideration except $80 for an interest in the property, and that he was equitably entitled to receive of the proceeds of the transaction with the Lakeview Company only an amount proportionate to his payment toward the expenses.

The amendment to the amended answer of defendant Mc-Reynolds follows the theories of that of defendant Barrett. It does not, however, set forth any agreement between Barrett and the plaintiff to the effect that the latter's interest in the proceeds derived from the sale of the lands should be based upon the amount of Gibson's contribution to the expenses. And it does not plead the alleged settlement between Barrett and Gibson. This pleading also contains the assertion that Gibson agreed with Barrett to pay his proportion of locating and protecting the five mineral locations of which he was one of the locators.

The court found that in October, 1908, plaintiff and defendants entered into an agreement that plaintiff was to join with defendants in the location of certain placer mining claims and was to have an interest in said claims. The court found against plaintiff upon his assertion that he was interested in all of the property in the same proportion as was each of the other locators. There were findings that plaintiff's interest in the 920 acres was 20 acres net and that his original interest in the locations amounted to 80 acres and was so stated by defendant McReynolds in writing. There were findings against the claim of settlement as set up by Barrett and against Gibson's averment that he had paid $75 in addition to the $80

admittedly contributed by him.  There were findings against
the special defense.  The court also found that the sums
actually paid by plaintiff were largely in excess of his share of
the expenses incurred in connection with the claims in which
he actually had an interest.

The appellants insist that there is a fatal variance between
the contract alleged by plaintiff and the one found by the
superior court, and that therefore the judgment should be re-
versed.  In the plaintiff's pleading the contract was styled a
"special" agreement and appellants say that the contract
found is an implied agreement.  They do not attach any pecul-
iar magic to the word "special" except as that epithet empha-
sizes the fact that plaintiff declares upon an express contract.
There is no merit in their contention.  While it is true that
the court did not find the exact contract pleaded by plaintiff,
the defendants themselves asserted the existence of an express
agreement by which Gibson was to share in the proceeds of the
sale of those rights obtained in and to the lands described in
the notices on which plaintiff's name appeared as a locator.
The judgment is not based upon a finding of an implied con-
tract.  On the contrary, the court found that in the month of
October, 1908, plaintiff and defendants entered into an agree-
ment that plaintiff was to join with defendants in the location
and was to have an interest in certain mining claims.  The
theory of appellants seems to be that where a court finds that
the rights of a party to an agreement are those of a locator,
the existence of an express contract is absolutely negatived.
But the fact that a party to a contract has rights founded
upon his status as a locator does not exclude the existence of
or recovery upon an express contract.  For example, the law
will imply that two partners will share the losses or the profits
of their business, but such implication will not exclude proof
of the existence of an express contract to the same effect.  The
enterprise outlined and proven in this case was in the nature
of a partnership, and while perhaps plaintiff's rights as
against the government or against those claiming in opposition
to the locations made by him or his associates would rest en-
tirely upon implication, his rights as against his fellow-locators
depended, as alleged and found, upon an express contract.
It is true that plaintiff claimed greater scope for his contract
than the court found, but that circumstance did not produce
a variance between the allegations and the proof such as re-

quires a reversal of the judgment. Such difference as there was did not lie in kind but in quantity and degree, and was not in contemplation of law a variance. (*Plate* v. *Vega,* 31 Cal. 384.)

But in any view of the case defendants suffered no injury. The trial was had upon the issues arising out of the contractual relations of the parties, and whether we call the contract an express or an implied one we cannot see that defendants were injured by any variance between averment and proof. (Code Civ. Proc., sec. 469; *Herman* v. *Hecht,* 116 Cal. 553, [48 Pac. 611] ; *Herd* v. *Tuohy,* 133 Cal. 55, [65 Pac. 139] ; *Lyles* v. *Perrin,* 134 Cal. 417, [66 Pac. 472] ; *Cheda* v. *Bodkin,* 173 Cal. 7, [158 Pac. 1025–1029] ; *Gordon* v. *Cadwalader,* 172 Cal. 254–257, [156 Pac. 471].)

The court did not err in denying the motion for nonsuit. The plaintiff testified to the existence of the agreement and defendants not only set up a contract in their pleadings, but they alleged that the consideration was Gibson's promise to pay his proportion of the expenses incurred in developing and protecting the oil-bearing lands. That he did pay something was admitted, the principal controversy being in regard to the amount.

Certain of the findings are attacked on the ground that they are not supported by the evidence. One objection is that the court erred in finding that plaintiff paid his share of the costs of locating the land and other amounts demanded by defendants. One of the defendants, McReynolds, testified that $930 had been spent upon the location, assessment work, protection, etc., of the lands. Plaintiff was interested in one-fourth of the total locations. He was therefore bound to pay his proportion of $232.50, which is one-fourth of $930. There were ten locators upon each of the five tracts in which he was interested. Upon the basis of one-tenth of the obligation he would be bound to pay $23.25, and even upon the claim of appellants that his duty was to bear one-sixth of the expense, his share of the burden would be less than half of the amount, $80, concededly paid by him.

Appellants attack the finding that the interest of Gibson was 80 acres net and was so stated by defendant McReynolds in writing. This finding is based upon a letter from McReynolds to Gibson informing him that he was associated with others in the locations made on November 16, 1908, on five

quarter-sections therein described. There was no declaration in terms that such interest amounted to 80 acres, but as respondent's counsel says, that is "a mere matter of arithmetic." There were ten locators and eight hundred acres. The result is obtained by a simple division of eight hundred by ten.

Appellants attack the ruling of the court in admitting a copy of a certain memorandum received by plaintiff from defendant Barrett. The document was admitted in evidence without proof of the loss of the original or accounting in any way for its nonproduction. Counsel for defendants, when the document was offered at the trial, objected that it was "incompetent, irrelevant, and not shown to be a copy." As the witness, Gibson, had sworn that the paper was "*an exact copy*" of the original, there was evidence to support the ruling admitting it. The objection now urged by appellants was neither made nor argued at the trial and will not be considered here. But if the court erred in accepting the writing, defendants were uninjured, as defendant Barrett later testified that the original was returned to him and that he had it among his papers. But when he looked for it he could not find it. Thus defendants themselves sufficiently accounted for the failure of plaintiff to produce the original memorandum.

The superior court permitted a witness named Myers to testify to a conversation had with defendant Barrett when defendant McReynolds was not present. The conversation was clearly admissible as against Barrett and we are not to presume that the court considered it for any other purpose. We cannot see that the error, if error it was, prejudiced defendant McReynolds. The gist of the conversation was that Mr. Barrett expressed the belief that by failing to meet an assessment or call for $25 Mr. Gibson had either put himself in jeopardy of losing or had lost rights worth eight thousand dollars. We do not feel called upon to reverse the judgment or the order before us for review merely because the court failed to declare the intention of limiting the effect of the testimony of Myers to the case against Barrett.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.