[Civ. No. 7305. First Appellate District, Division Two.—July 26, 1930.]

SERV–U–GARBAGE COMPANY (a Corporation), Respondent, v. BOARD OF HEALTH OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

John J. O'Toole, City Attorney, and Arthur H. Barendt for Appellants.

John J. Barrett, *Amicus Curiae* in Support of Appellants.

Brobeck, Phleger & Harrison for Respondent.

STURTEVANT, J.—The plaintiff applied to the defendant board for a permit to transport refuse through the streets of San Francisco. The application was denied. Thereupon he commenced a proceeding in the superior court to obtain a writ of *mandamus* directing the defendant board to issue the permit. The defendants answered and a trial was had before a court sitting without a jury. The court made findings in favor of the plaintiff and from a judgment entered thereon the defendants have appealed.

On the fourteenth day of June, 1927, exercising the right of initiative, the electors of San Francisco adopted an ordinance the title of which is "Ordinance providing for the collection and disposition of refuse in the City and County of San Francisco; providing for the licensing of refuse collectors by the Board of Health; fixing the maximum rates or charges for the collection of refuse by licensed refuse collectors for homes and apartment houses; dividing City and County of San Francisco into collection routes; providing penalties for the violation of the provisions of this ordinance." Section 4 contains several paragraphs. We have designated two of them by letters. They are as follows:

"(A) Any person, firm or corporation desiring to transport through the streets of the City and County of San Francisco, any refuse as herein defined, or to collect or dispose of the same, shall make application to the Board of Health, for permission so to do. Said application for such permit shall contain the names of the person, firm or corporation, any of the particular route or routes designated in said map of routes, proposed to be served by said person, firm or corporation, and a statement that said person, firm or corporation will abide by all the provisions of this ordinance, and will not charge a greater rate for the collection and disposition of said refuse than that fixed in this ordinance. The Board of Health shall grant such application for a permit, but may refuse the same when the route proposed is already adequately served by a licensed refuse collector.

"(B) An application for a permit *must* be granted, however, by the said Board of Health, and it is *mandatory on said Board to grant the same, when it shall appear in any said application* for a route or routes by a person, firm or corporation, that twenty per cent or more of the householders, business men, apartment house owners, hotel keepers or residents in said route or routes, using refuse service, and paying for the same, or obligated to do so, have signed a petition or contract in which they have stated that they are inadequately served by any refuse collector who is then collecting refuse on said route. That inadequate service is herein defined as the failure, on the part of any refuse collector, to properly collect refuse on said route, or the overcharging for the collection of same, or for insolence towards persons whose refuse has been collected, or the collection by any refuse collector whose license has been revoked as provided in section 9 hereof. Such permit so granted by the Board of Health shall not be exclusive, however, and one or more persons, firms or corporations may be given a permit to collect on the same route." No appeal is provided for.

The ordinance provides that no one shall collect refuse except that he holds a permit authorizing him so to do. Upon being licensed he is furnished a metal badge by the Board of Health and pays a fee of five dollars. Nothing is said regarding an annual renewal or any other renewal. It is further provided that "No license of a refuse collector shall be revoked except upon a hearing of which the refuse collector has been given a notice of at least three days."

The applications which were made to the defendant board purported to be filed under the provisions of paragraph (B). Except as will hereinafter be noted there is not a particle of contention that in form they did not meet all the calls of that part of the ordinance. However, the defendants contended in the trial court and in this court that neither the charter nor the ordinance provides (1) for the verification of the signatures or (2) the determination whether the signers were users or (3) whether the signers constituted twenty per cent of the users as that term is defined in section 4 of the ordinance. The defendants call these matters to our attention and thereupon they cite and strenuously rely upon *O'Connell* v. *Behan*, 19 Cal.

App. 111 [124 Pac. 1038]. In this connection the defendants contend that under the ordinance the defendant board had the duty cast upon it of verifying, or causing its agents to verify, all of the facts and thereafter to hold a hearing and receive reports of the agents. That at such time the plaintiff should by legal proof show to the defendant board that all the facts recited in the petitions and application were true, that all the signatures were genuine and that the signers were duly qualified. The plaintiff replies that it fully complied with all the calls of the ordinance and that upon filing its aforesaid papers it was entitled to a permit. In other words, the rights of the parties are to be determined on whether the ordinance imposed judicial functions on the defendant board or functions purely ministerial. We think that the contention of the plaintiff is the correct one. Under paragraph (A) it is patent that the issuance of the permit there provided for is a purely ministerial act. The ordinance assumes that the defendant board, in certain instances, may have issued permits to certain collectors who are giving an "inadequate service." That those, who issued the permit under which the "inadequate service" arose should not have the determination of the questions as to when and to whom applications for additional permits should issue, was the clear purpose of the electors in enacting paragraph (B). Neither under paragraph (A) nor under paragraph (B) is a hearing provided. However, *ex industria,* the ordinance provides for both a hearing and the giving of a notice of the hearing before a permit may be revoked. Under similar facts, the act of granting or refusing an application for a permit has been held to be purely ministerial. (*Grumbach* v. *Lelande,* 154 Cal. 679, 683 [98 Pac. 1059]; *French* v. *Cook,* 173 Cal. 126, 130 [160 Pac. 411]; *Tulare Water Co.* v. *State Water Com.,* 187 Cal. 533 [202 Pac. 874].) The discussion of the principle is so extended in the case last cited that we need not further dwell on it at this time. In this state, to obtain a regulatory permit, the provisions of the ordinance or statute frequently prescribe purely ministerial acts. (Index to Laws, p. 725.)

Again, it is asserted that the defendant board has no funds to enable it to investigate and verify the facts. We have just shown no such duty rests on the board.

However, if it is advised that fraud or other wrongful acts are being perpetrated it may refuse to issue the permit. Later, when the applicant commences his proceeding to compel the issuance of the permit such facts can be put in issue and a determination thereof under the rules of law can be had.

That the City of San Francisco was entitled to enact an ordinance on the subject of collecting garbage is not disputed. When it undertook to do so it had a right to adopt such an ordinance as was not unreasonable. That the matter of granting permits is sometimes placed in the discretion of the officer having the power to issue permits is true, but it is equally true that each ordinance or statute on this subject will be construed according to its own terms. It is a rule of general law that no officer may act arbitrarily in granting or refusing a permit. (37 C. J. 240; *Reed* v. *Collins*, 5 Cal. App. 494, 502 [90 Pac. 793].)

If we are right in holding that, in passing on the legality of the plaintiff's application, the defendant board was exercising ministerial powers, and we have no doubt on the subject, then certain other propositions follow as a matter of course. If, when the applications were presented to the defendant board, it was in doubt as to what it should do, then it had the right to deny the applications and to await the determination in the courts of the questions involved. Thereafter when the plaintiff commenced his action in *mandamus* to obtain the determination of the courts the duty rested on the plaintiff to prove the legality of its application in all respects. But, the defendants claim, the plaintiff did not introduce competent evidence sustaining the burden resting on it. To that claim there are several answers. The trial court did not, over the objection of the defendants, receive any incompetent testimony. If any was admitted, it came in without objection. Being in the record under those circumstances it is some evidence tending to support the findings made by the trial court. (*Gibson* v. *McReynolds*, 175 Cal. 263, 269 [165 Pac. 921]; *Walberg* v. *Underwood*, 39 Cal. App. 748, 752 [180 Pac. 55].) But, we think the findings rest on a *prima facie* case made by evidence which was competent, relevant and material. Those who circulated the petitions took the stand and testified as to each signature being genu-

ine. Indeed, such is the presumption of law. They testified that they called at each street number and inquired for the person occupying the premises. When such person was located the petition was presented and he was allowed to read it, or it was read to him, and he signed on the premises. .It is but a fair inference that each of such signers was a householder, a user of garbage service, and that he paid for the use. In each petition it was recited that the signers had been "inadequately served." That recital answered the call of the statute. We cannot believe that the electors who enacted the ordinance contemplated that the trial court should have caused each signer to come forward and testify as to the details of his contro-. versies with his former garbage man, thus showing wherein he had been "inadequately served." ■ The plaintiff was not bound to show that the signers constituted twenty per cent of the hotel men and twenty per cent of each other class named in the ordinance. It was enough that the signers included twenty per cent gross of all persons in all classes named in the ordinance. (*State* v. *Fort*, 107 Mo. App. 328 [81 S. W. 476, 477].) ■ No reason existed for calling every signer. If one or more of the signers had imposed, he was equally available to each party as a witness and neither may complain because the other did not call him. (10 Cal. Jur. 781; *Gibson* v. *Kennedy Extension G. Min. Co.*, 172 Cal. 294, 305 [156 Pac. 56].) ■ It will be presumed that the signers were innocent of wrong and that the ordinary course of business has been followed. (Code Civ. Proc., sec. 1963, subds. 1 and 20.)

■ The plaintiff introduced proof as to the number of street numbers in the district as being some evidence of the number of possible users. The names of signers, their street numbers, and where located in each particular district, were duly listed. It is not exact, therefore, to say that there was no evidence that twenty per cent of the users did not sign.

■ It is asserted that the defendant board acted in good faith. Conceding such to be the fact, it is equally clear that it fell into serious error. ■ The defendants claim that the ordinance is unreasonable, arbitrary and invalid because of the portion which we have quoted from section 4. The contention is not well founded. The fact

that the provision could have been better framed does not strike at its validity. If the law-making power was satisfied with the procedure provided, the courts may not complain. (*In re Madera Irr. Dist.*, 92 Cal. 296, 302 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675]; *Bickerdike* v. *State*, 144 Cal. 681, 687 [78 Pac. 270].)

The defendants call to our attention the fact that formerly the Board of Health had the power to hear complaints regarding inadequate service. Assuming that they had heard some of those complaints and that the board had ruled against the users, it is asserted that by following the procedure in the ordinance the board's determination will be overruled. Granting all of these contentions, they are but statements of the ordinary result of the use of the initiative. Nevertheless, the initiative has been adopted and is a part of our law.

The defendants complain because the petitions did not specifically state the particulars of "inadequacy of service." The petitions contain the ultimate facts recited in the ordinance. Nothing else was required.

Again, it is said that the provision authorizing twenty per cent of the users to take the action which they have taken is an unlawful delegation of power. If so, the people, in the exercise of the initiative, have transgressed some law. Which one? Clearly none whatever. The people had as much right to place power in certain householders as to place it in the hands of the defendants. Neither may it be held that *mandamus* was not an appropriate remedy. (*Inglin* v. *Hoppin,* 156 Cal. 483, 491 [105 Pac. 582] ; *Salt Lake City* v. *Bernhagen,* 56 Utah, 159 [189 Pac. 583, 586] ; 38 C. J. 743.)

It is asserted that the trial court erred in denying defendants opportunity to inquire into the character and extent of the interest of the canvassers for the signatures to the petitions. If it had allowed such inquiries it would have been running into collateral matters. Finally, the defendants complain of several rulings regarding the admission or exclusion of evidence. We have carefully read the transcript and we do not find a single ruling that in the least prejudiced the rights of the defendants.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 23, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 23, 1930.