[Sac. No. 4598. In Bank.—April 3, 1933.]

GLOBE INDEMNITY COMPANY (a Corporation), Plaintiff and Appellant, v. DANIEL R. HANIFY et al., Defendants; CLARKSBURG HIGH SCHOOL DISTRICT OF THE COUNTY OF YOLO (a Public Corporation), Defendant and Appellant; FIRST NATIONAL BANK OF SONORA (a Banking Corporation) et al., Respondents.

Hartley F. Peart, Huston, Huston & Huston and Russel Shearer for Plaintiff and Appellant.

Neal Chalmers, District Attorney, for Defendant and Appellant.

Butler, Van Dyke, Desmond & Harris, Elliott, Atkinson & Sitton, Rowan Hardin, Armfield & Eddy, Peter A. Breen, C. L. Colvin and Earl D. White for Respondents.

SEAWELL, J.—On July 6, 1928, the Clarksburg High School District of the County of Yolo entered into an agreement with Daniel R. Hanify as contractor to construct within a fixed period a certain gymnasium for the use of said High School District at the agreed cost of $56,324. Monthly payments of seventy-five per cent of the value of the labor and materials were to be made to the contractor upon the certificate of the architect. The remaining twenty-five per cent was to be retained by the High School District for a period of thirty-five days after final acceptance of the work. Appellant Globe Indemnity Company, a corporation, became surety for the contractor, Daniel R. Hanify, upon two bonds in the sum of $30,000 each, one in favor of laborers and materialmen and the other conditioned for the faithful performance of the contract.

Upon the completion of said building there remained in the hands of said High School District, owner, the final payment in the sum of $14,524.50, which sum was due and unpaid under the terms of said builder's contract. The bank had advanced, with the consent of the surety, all of said sum of $14,524.50, but $1133.75 in discharge of materialmen's claims. The cost of constructing and completing said building, as shown by the claims of materialmen subsequently filed against it, exceeded the contract price by the sum of $10,940.29. By its answer said School District admitted its liability, by reason of its contract, in said sum of $14,524.50, and pleaded its willingness and ability to pay said sum to whomsoever the court should direct or by its decree should determine was entitled to receive the same.

Notice of completion of said building was filed for record in the official records of the county of Yolo on January 8, 1929. Three of said materialmen filed stop notices within the thirty-five day period following the filing of the notice of completion, but the trial court found that none of them had given the five days' notice of proceedings to enforce payment, as prescribed by section 1184a of the Code of Civil Procedure. The warrants issued by the said High School District were in every instance drawn in favor of said bank.

The last one, covering the final payment in controversy in the sum of $14,524.50, was so drawn on February 11, 1929, and was received by the bank on February 13, 1929. Payment was refused by reason of said stop notices.

As a result of trial the court gave judgment in favor of all the material claimants and against contractor Hanify, who defaulted, and against the surety company, and directed that the moneys in the possession of the Clarksburg High School District be paid to the clerk of the court, and that the bank be reimbursed out of said sum of $14,524.50, held as a final payment, to the extent of $13,390.75, moneys which it had paid to laborers and materialmen, and that the difference between the remaining $1133.75 and the total amount found to be due the materialmen be entered as judgment against Hanify and his surety. A similar judgment was also entered in favor of the surety against Hanify. No question is raised that any claim for material was excessive or in any degree tainted with fraud.

The claimants being numerous, their several actions were joined, and the court upon consent or stipulation of counsel made orders of consolidation, as provided by sections 1184a and 1195 of the Code of Civil Procedure. Cases designated Sacramento No. 4605 and Sacramento No. 4598 are herewith presented on said consolidated record for the purposes of this appeal.

Some eighteen parties, including the Clarksburg High School District, owner of the building, Globe Indemnity Company, surety, First National Bank of Sonora, assignee, and all of the materialmen, appeared by direct proceedings or by cross-actions. The materialmen are not appealing from the judgments rendered by the trial court. Appellant Globe Indemnity Company and respondent bank are the parties really interested in the result of this appeal. Hanify, as was stated before, defaulted. The question which is decisive of the rights of said bank and surety company is whether the sum of $13,390.75 of said total final payment, to wit, $14,524.50, due from the owner upon completion of the building under the terms of its contract, should be paid to the bank in replacement of an exact amount which it advanced in payment of materialmen's claims in the course of construction, and which was so applied, or whether said final payment withheld by the owner subject to the order of

court should be applied to the payment of claims of material-men, some of which were incurred in excess of the contract price, notwithstanding certain agreements entered into between the surety company and the bank with respect to the subject matter of the controversy. It may be here noted that the bank paid labor and materialmen's claims during the progress of construction of said building amounting to $55,190.25, leaving the sum of $1133.75 in the hands of the owners in excess of the total sum paid by the bank. Said sum of $1133.75 was awarded to said surety company by the judgment.

The bank's action was *in rem* against the fund, and it did not seek nor was a judgment rendered in its favor against the surety company. The right to said fund as between the surety company and said bank by reason of the latter's participation in the matter as herein set forth is conceded by counsel to be the real issue presented by this appeal. If said bank is deprived of the moneys advanced by it to the materialmen in payment of materials which actually went into the building it will in effect be substituted for the surety company. The solution of the question depends upon the intent and understanding with which the surety company and said bank entered into a certain transaction whereby said bank became the assignee of contractor Hanify for a definite purpose. It appears that Hanify, at the time or prior to the time he executed said assignment of contract as hereafter set forth, was indebted to said bank in the sum of approximately $3,000, or possibly more. On July 18, 1928, twelve days after he had been awarded said contract, he executed an assignment of it to said bank for the special purposes therein set forth.

Said assignment restates the fact that the contract price of said building was fixed at *$56,324*. It is further provided therein that said assignment vests in the said bank the right to have, receive and collect any and all moneys due for the performance of said contract from said High School District, and to receipt for the same, and that a copy of the assignment shall be filed with the board of trustees of said Clarksburg High School District. It also contains the following provision: ''This assignment is made for the purpose of securing to the said First National Bank of Sonora the payment of all moneys past due, now due, or which may be hereafter

*advanced* to the said Daniel R. Hanify.'' (Italics supplied.) On July 23, 1928, the attorney of said bank forwarded a letter of notification to the Globe Indemnity Company calling attention to the fact that it was *financing* Mr. Hanify on his work of construction, and, further, ''to give notice of the true conditions existing and that Mr. Hanify, in order to protect the bank, had assigned said contract to the First National Bank. The purpose of this assignment is to secure the bank and to require that all moneys be paid to the bank so that we can know that the moneys are expended solely for the purpose of paying for labor, materials and supplies. For your records I am enclosing a *copy of the assignment* made to the First National Bank, the original of which assignment will be filed with the Board of Trustees of the Clarksburg High School District.'' Some thirty days thereafter, to be exact, on August 23, 1928, said surety company replied to the bank's letter. In its reply letter it referred to the building contract, acknowledged its suretyship and proceeded as follows: ''The undersigned being the surety on that certain bond furnished the Clarksburg High School District . . . does hereby consent, authorize and direct that all moneys that may become due under said contract for work done or materials furnished, shall be paid to the First National Bank of Sonora, in accordance with the assignment of said contract by D. R. Hanify to the First National Bank of Sonora; it being understood and agreed that this assignment is subject to the payment of the premiums on said bond, the payment of premiums on compensation and public liability policies issued in connection with said contract, and *the payment of all labor and material bills incurred in said work;* that said assignment and the payments herein authorized to be paid to the said First National Bank of Sonora shall not release said principal or surety from liability under said bond.'' (Italics supplied.)

It is the contention of appellant surety company that the words, ''It being understood and agreed that this assignment is subject to . . . the payment of all labor and material bills incurred in said work,'' contained in said surety company's letter of consent, meant that the bank assumed an obligation greater than was imposed upon the owner under its contract, the terms of which no doubt were understood to prescribe the limit of the bank's obligation to the

materialmen, which was that it would pay to materialmen all moneys it should receive from the owner in liquidation of said claims to the extent of the moneys received within the terms of said contract. The bank complied with its agreement, even to paying the premiums on compensation and public liability policies issued in connection with said building contract, a condition imposed upon the bank by the surety company as one of the conditions of its consent. If the surety company's construction of the agreement between the bank and the surety company be correct, it would lead to the anomalous situation of the owner being compellable to pay but once, while the bank, which merely obligated itself to see that the moneys received from the owner would in fact be properly applied, would be compelled to pay twice. It should be kept in mind that we are not here dealing with a question which affects the rights of laborers and materialmen to enforce liens as prescribed by statute, but solely with a transaction which is without the realm of the Mechanics' Lien Law so far as the real parties to this appeal are concerned.

We are of the view that the trial court's finding on this issue is sound. The last line of the surety company's letter is inconsistent with the construction which the surety company would place upon it. It is there plainly stated that said assignment and the payments therein authorized ''shall not release said principal or surety from liability under said bond''. The natural and logical inference to be drawn from the transaction itself as between the surety company and the bank—neither of which is entitled to the benefits which the statute confers upon laborers and materialmen—is that the surety company regarded the proffer of the bank as an assurance that all the moneys which were received by it from the High School District fund would be actually applied to the payment of materials furnished to and labor performed upon the building. The service agreed to be performed by the bank was a protection and benefit to the surety company, in that it provided that the fund which otherwise, under the building contract, would have passed into the hands of a contractor who was obviously in financial straits should be handled by a responsible corporation. That the contractor was in embarrassing circum-

stances must have been known to the surety and its agents, not alone from the recitals of the assignment to which said surety company gave its assent, but also from the contents of the bank's letter to said surety company. The assignment—a copy of which was in the hands of the surety company—was of itself an admission by the contractor that he was not able to finance the project. The Hanify assignment, the bank's letter, and the surety company's consent letter show that the assignment was taken as security for moneys furnished and to be furnished to pay for the construction of the building, and without any thought or intent on the part of anyone that the bank was assuming Hanify's obligation to complete the building. The surety company having given its consent that the moneys be applied in the manner in which the bank applied them, placed the control of the fund, so far as the surety was concerned, entirely beyond its reach. It is in no position to complain. It is not reasonably conceivable, viewed in the light of the ordinary course of business transactions, that said surety company was prejudiced by the bank becoming the custodian or paymaster of the fund which came into its possession for distribution. It will not be presumed that the surety company consented to the assignment as a decoy to draw the bank into a position whereby its liability as surety might be shifted from its own shoulders to those of the bank. Doubtless, no thought of exceeding the contract price entered into the minds of any of the parties, the understanding being that should the bank apply the moneys received by it to the payment of materialmen's claims said surety company would regard its obligation discharged, and the bank's limited participation in the transaction would in no manner release or affect the surety company's liability on its bond. Such a contract was entirely within the purview of said parties, who were free, as between themselves, to contract in the premises. Their agreements between themselves could not affect rights conferred by statute upon the materialmen.

In the instant case the bank is not attempting to compel payment of an antecedent debt, for no such payment was made; nor is it attempting to recover from the sureties moneys loaned the contractor, under the guise of furnishing labor and material used in the construction of the work,

as was the fact in *Cadenasso* v. *Antonelle*, 127 Cal. 382 [59 Pac. 765], the case upon which appellant surety company principally relies to sustain its point. The facts in the Cadenasso case are in no material respect similar to the facts of this case. Turner and Vermeil were sureties on contractor Antonelle's bond for the construction of a tunnel, conditioned for the payment of labor and material performed or furnished in the construction of said tunnel. The court there held that the evidence to the point that plaintiffs furnished money to the contractor would not support the finding that they furnished material. The only point decided in that early case is that one who advances money as a loan, although it is expressly for the payment of materials and labor devoted to the erection of a building, can have no claim to the benefit of the Mechanics' Lien Law. Respondent bank herein is not attempting to enforce any lien claim, or attempting to obtain a money judgment against said surety. Its purpose is to reimburse itself out of a fund which its payments for materials, made with the consent of the surety, had created, and the application of the same to the purpose above stated is not opposed upon this appeal by any materialman or laborer. We are of the view that the impelling force of the consent agreement estops the surety company from resisting the payment of said fund to the bank. The equities of the case vastly preponderate in the bank's favor.

Sufficient has already appeared to justify an affirmance of the judgments awarding said final payment, consisting of $14,524.50 less said sum of $1133.75, to the bank, solely upon the assent of said surety as set forth in said agreement made between the surety and the bank to the effect that the latter would be held harmless in making said payments on account of material furnished to the building.

Appellant surety company admits that the liens of the materialmen are valid, but attacks the notice of completion of the building. The notice of completion strictly complies with the provisions of the Mechanics' Lien Law of this state and started the time running for the filing of liens on the day it was recorded. If the notice was invalid, as claimed by the surety, for the reason that it did not strictly comply with the Public Works Act (Stats. 1919, p. 487; vol. 3, Gen. Laws [1931], p. 3680), a contention

with which we do not agree, the time for filing claims of liens was extended ninety days after its completion by the provisions of section 1187 of the Code of Civil Procedure, and the liens of all the materialmen having been filed within that period, were within time. This being so, the surety is bound by its bond to the materialmen. ■ The validity or invalidity of the notice of completion could not affect the agreement made between the bank and surety as to the bank's right to possess said fund. The surety by its contract bound itself unto all materialmen for the payment of all claims for materials furnished and used in the construction of said building in case said claims were not paid by the contractor. By both the terms of the bond and the law governing the subject, the materialmen had a direct action against the bond, and they were not required, as formerly, to exhaust any other fund or join any other parties with the surety in an action to recover on the bond.

■ The Public Works Act was first passed in 1919, and was designed as an aid to mechanics and materialmen in the enforcement of their lien rights. Its special effort was to make the general Mechanics' Lien Law more expansive and adaptable to actions in which the state, irrigation and reclamation districts and other large public corporations were the builders. That it is part of the Mechanics' Lien Law of the state is made evident by the numerous references it makes to said law, and by the adoption of its provisions by reference. Both laws deal with the same specific subject, and are to be construed together. ■ The legislature did not intend to defeat or embarrass the right of a lien claimant by the remedies prescribed, but meant to broaden his remedy. Two remedies pointing to the same result being open to the claimant, he may pursue either as his interest will be best served. A provision inserted in the bond by the surety, as here, in an attempt to limit the remedy a mechanic or materialman may choose to elect, would be ineffectual as an invasion of his statutory rights to adopt the remedy provided by law in a proceeding in which liberality of construction is favored.

■ The fact that cases herein were consolidated for convenience did not deprive the trial court of its right or duty to make special findings if the justice of the case required it. The doctrines of subrogation and exoneration, urged

in appellant's closing brief, have no relevancy to the issue upon which the cases herein are decided.

We have considered all the points made by appellant surety company, and are satisfied that it is not entitled to have any part of the fund which was awarded to the bank to be applied to the payment of lien claims.

The materialmen were evidently satisfied with the judgments entered in the trial court as they have not appealed.

The judgments appealed from herein are each affirmed.

Shenk, J., Langdon, J., Curtis, J., and Waste, C. J., concurred.

Rehearing denied.