[Civ. No. 9085. Second Appellate District, Division One.—June 22, 1935.]

PNEUCRETE CORPORATION (a Corporation), Respondent, v. UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation) et al., Appellants.

Henry E. Phister for Appellants.

Charles R. Nelson for Respondent.

ROTH, J., *pro tem.*—On November 12, 1929, J. D. Harms, one of the appellants, as contractor, entered into a contract with Los Angeles County Flood Control District for certain mechanical work, to wit: ''Guniting of levees in San Gabriel

Wash''. Pursuant to the Public Works Act, Statutes of 1919, page 487, as amended to and including May 10, 1929, Harms, as principal, and appellant United States Fidelity and Guaranty Company, as surety, executed and delivered to the district a "Bond for Materialmen and Laborers", dated November 2, 1929, whereupon appellant Harms, as contractor, entered upon the performance of and completed said contract. During the course of the work under said contract, respondent Pneucrete Corporation contracted to and did furnish to Harms certain equipment and machinery to be used and which was actually used in and upon said public works. Harms agreed to pay therefor certain sums of money as provided in the contract with respondent for the rental thereof, which contract contained the following clause: "In case of controversy, both parties agree to arbitrate the issue in accordance with the rules of the American Arbitration Association.''

On January 27, 1930, respondent filed this action against appellants, as principal and surety upon the "Materialmen's Bond", alleging the execution of the contract for the public improvement, the giving of the "Materialmen's Bond", the contract for the hiring of equipment by Harms from respondent materialman, alleging with reference to the "Materialmen's Bond", "that plaintiff relies particularly upon said written instrument". Thereafter on February 24, 1930, appellants answered said complaint, which answer in addition to denying generally the material facts denied the execution of the contract executed between respondent and Harms. On the same day appellants filed their answer to the complaint, a demurrer which had been theretofore filed by appellants to the complaint was sustained. Thereafter an amended complant, practically identical to the original complaint save that it pleaded the contract for the hiring of the equipment by defendant Harms in its legal effect rather than *in haec verba*, was filed, to which amended complaint defendants filed their verified answer on March 17, 1930, denying the contract between respondent and Harms, but admitting the execution of the "Materialmen's Bond" and admitting also that respondent relied thereon.

Twenty-two months thereafter the case was called for trial, at which time the question of arbitration was first raised by appellants. Until the day of trial appellants had not filed

any petition pursuant to section 1282 of the Code of Civil Procedure for an order directing that arbitration proceed, made any motion or taken any other means to stay the action, or in any manner raised the issue of arbitration by answer filed to the original or to the amended complaint. On January 27, 1932, which was the day before the date upon which the case had been set for trial, appellants served upon respondent a "Notice of Motion to Stay Action", which was supported by the affidavit of Harms, in which affidavit Harms referred to the contract he had made with respondent and specifically to the arbitration clause therein, averring further that Harms had requested respondent to proceed with arbitration in the manner provided for in the contract and that respondent had refused to go ahead with said arbitration. The affidavit does not state when the demand for arbitration was made nor when plaintiff refused to arbitrate prior to the date of the affidavit. A reply affidavit was made and filed by the attorney for respondent, which affidavit denied a refusal to arbitrate but admitted a refusal to arbitrate on that date, which was the date of trial. This affidavit also averred that the action was on the bond; that the appellants had failed to petition for arbitration and that appellants had in effect waived arbitration because of their default in making any attempt to proceed therewith. The motion to stay action was denied, whereupon appellants requested and were granted permission to file an amended answer, which amended answer set forth the contract between Harms and respondent which had previously been denied by two several answers filed by said appellants, one to the original and one to the amended complaint, and no allegations are made in said amended answer as to the desire, willingness, readiness or ability of said appellants to arbitrate. Judgment went for the respondent and from that judgment appellants appeal.

Conceding that the arbitration clause in the contract between respondent and Harms was mandatory upon those parties, under the facts and circumstances here outlined the decisive question on this appeal is whether that contract became a part of the bond executed by appellants pursuant to the Public Works Act, Statutes of 1919, page 487, as amended.

The purpose of the bond provision of the Public Works Act, we believe, was to give to materialmen and labor-

ers who furnish material for and render services upon public works an additional means of receiving compensation. This rule has been consistently recognized with reference to private works. (17 Cal. Jur. 15, 16; *Peterson* v. *Freiermuth,* 17 Cal. App. 609 [121 Pac. 299] ; *Avery* v. *Clark,* 87 Cal. 619 [25 Pac. 919, 22 Am. St. Rep. 272] ; *Birch & Co.* v. *Magic Transit Co.,* 139 Cal. 496 [73 Pac. 238] ; *Humboldt Lumber Mill Co.* v. *Crisp,* 146 Cal. 686 [81 Pac. 30, 106 Am. St. Rep. 75, 2 Ann. Cas. 811].) No lien being available to those who perform labor or furnish material on public works (*Cooley* v. *Freeman,* 204 Cal. 59 [266 Pac. 545]), the provisions of the Public Works Act requiring a bond were obviously enacted to create a fund in lieu of the building or work itself against which materialmen and laborers might proceed as an additional and contemporaneous remedy. The bond required is not a voluntary bond but a statutory bond (*Williamson* v. *Egan,* 209 Cal. 343, 344 [287 Pac. 503] ; *Continental Nat. Bank* v. *Republic Gas Co.,* 202 Cal. 586, 589 [262 Pac. 300]), and affords an additional or cumulative remedy. (*Sunset Lumber Co.* v. *Smith,* 95 Cal. App. 307 [272 Pac. 1068].) As a result of the legislation mentioned there is now given to materialmen and laborers who furnish material or render services on public works an added and new security. (*Globe Indemnity Co.* v. *Hanify,* 217 Cal. 721, 730 [20 Pac. (2d) 689] ; *United States, to the Use of Standard Oil Co.,* v. *City Trust etc. Co.,* 21 App. D. C. 369; *Fidelity & Deposit Co.* v. *United States, etc.,* 20 App. D. C. 376 (affd. 187 U. S. 315 [23 Sup. Ct. 120, 47 L. Ed. 194]) ; *City of St. Louis* v. *Hill-O'Meara Construction Co.,* 175 Mo. App. 555 [158 S. W. 98] ; *National Surety Co.* v. *Bratnober Lumber Co.,* 67 Wash. 601 [122 Pac. 337] ; *Griffith* v. *Stucker,* 91 Kan. 47 [136 Pac. 937] ; *Donaldson & Yahn* v. *Benight,* 105 Okl. 108 [232 Pac. 116].)

In *Globe Indemnity Co.* v. *Hanify, supra,* at page 730, the court says:

"The Public Works Act was first passed in 1919, and was designed as an aid to mechanics and materialmen in the enforcement of their lien rights. Its special effort was to make the general Mechanics' Lien Law more expansive and adaptable to actions in which the state, irrigation and reclamation districts and other large public corporations were the builders.

That it is a part of the Mechanics' Lien Law of the state is made evident by the numerous references it makes to said law, and by the adoption of its provisions by reference. Both laws deal with the same specific subject, and are to be construed together. The legislature did not intend to defeat or embarrass the right of a lien claimant by the remedies prescribed, but meant to broaden his remedy. Two remedies pointing to the same result being open to the claimant, he may pursue either as his interest will be best served. A provision inserted in the bond by the surety, as here, in an attempt to limit the remedy a mechanic or materialman may choose to elect, would be ineffectual as an invasion of his statutory rights to adopt the remedy provided by law in a proceeding in which liberality of construction is favored.''

It has been held that the statutory materialman's bond referred to in the above excerpt as being similar to the bond here in question creates a direct obligation, and that the bond itself affords a right of action against the principal and the surety. (*General Electric Co.* v. *American Bonding Co.,* 180 Cal. 675, 679 [182 Pac. 444]; *Purington* v. *Olsten,* 45 Cal. App. 621 [188 Pac. 288].) ▮ The action upon the statutory bond is not in any sense based upon the personal liability of the contractor but is based upon the obligation of the bond, since the bond provides a separate and distinct and statutory remedy. The obligation of the bond, therefore, is enforceable without reference to any contract between the contractor and the materialman. (*Cooley* v. *Freeman,* 204 Cal. 59 [266 Pac. 545]; *Hub Hardware Co.* v. *Aetna etc. Co.,* 178 Cal. 264, 266, 267 [173 Pac. 81]; *Los Angeles Stone Co.* v. *National Surety Co.,* 178 Cal. 247, 251 [173 Pac. 79]; *Williams* v. *Tingey,* 26 Cal. App. 574 [147 Pac. 584]; *Holden* v. *Mensinger,* 175 Cal. 300, 303, 304 [165 Pac. 950]; *Hazard, Gould & Co.* v. *Rosenberg,* 177 Cal. 295, 297 [170 Pac. 612]; *Wood* v. *Oakland etc. Transit Co.,* 107 Cal. 500, 502 [40 Pac. 806]; *Martin* v. *Becker,* 169 Cal. 301, 306 [146 Pac. 665, Ann. Cas. 1916D, 171].)

In *Cooley* v. *Freeman, supra,* the court says in speaking of an analogous situation, at pages 61 et seq.:

''The test of the liability of appellant surety hereunder is not what the rights of the contractor and highway commission are under the construction contract, but is: Did re-

spondent furnish material and perform labor which was utilized in the construction work covered by the contract for public work between the highway commission and the contractor, which said work was the subject of the indemnity agreement made by appellant and sued upon herein? There is no contention concerning the affirmative answer made by the court to this inquiry. The fact also is that the work of respondent was accepted.

"The liability of the surety is controlled by the provisions of the public work statutes of 1919, chapter 303 (Stats. 1919, p. 487), as it read in 1924, the date of the contract herein. Said statute providing for the indemnity bond thereunder read in part as follows: ' . . . and must provide that if the contractor, person, company, or corporation, or his or its subcontractor, fails to pay for any materials, provisions, provender or other supplies, or teams, used in, upon, for or about the performance of the work contracted to be done, or for any work or labor done thereon of any kind, that the surety or sureties will pay the same in an amount not exceeding the sum specified in the bond, and also, in case suit is brought upon such bond, a reasonable attorney's fee, to be fixed by the court . . . ' . . .

"There is, therefore, no escape from the conclusion that this obligation is in nowise affected by the terms of the contract between the highway commission and the original contractor, nor by a question of whether the contractor has breached his contract with the state. The obligation of the surety is to supply to persons in the class of respondent, a quick, reliable and sufficient means of payment. No lien law is available to persons performing labor or furnishing materials which go into the construction of public works."

To hold that arbitration could be compelled as between respondent and appellant Harms could easily have the effect of nullifying the bond, as is said in *Sunset Lumber Co.* v. *Smith*, 95 Cal. App. 307 [272 Pac. 1068], with reference to materialmen's bonds required under sections 1184 et seq. of the Code of Civil Procedure, at page 313:

"The act of 1919 does not require that plaintiff first proceed under sections 1184 et seq. The period within which suit may be commenced on the bond as provided in the act of 1919 shows that there need be no steps taken under sec-

tion 1187 or any waiting for a *pro rata* payment. The act of 1919 requiring that action on the bond be commenced within ninety days following the period within which claims of lien must be filed for record, it is obvious that if a materialman was first required to bring an action under section 1184a, a period of time would not only possibly but probably expire in excess of ninety days from the time any claims of lien must be filed for record, and, hence, the bondsmen would, by insisting upon the plaintiff first exhausting his rights pursuant to sections 1184 et seq., avoid liability for any portion of a materialman's claim. Such construction would defeat the purpose of the act.''

The requirement of a bond in this case is a matter of public concern and any attempt to limit, nullify or render ineffectual the bond or any of its terms would be against public policy. (*Cooley* v. *Freeman, supra; City of Pasadena* v. *Charleville,* 215 Cal. 384 [10 Pac. (2d) 745] ; *Globe Indemnity Co.* v. *Hunify, supra; Globe Indemnity Co.* v. *Barnes,* (Tex. Com. App.) 288 S. W. 121; *Standard Oil Co.* v. *Detroit etc. Co.,* 24 Ohio App. 237 [157 N. E. 418] ; *Hartford Accident etc. Co.* v. *Board of Education,* 15 Fed. (2d) 317 ; *Ingold* v. *City of Hickory,* 178 N. C. 614 [101 S. E. 525].)

 Further, we are of the opinion that upon the facts and under the circumstances of this case appellant Harms waived any right to insist upon arbitration. The laws with reference to arbitration were passed primarily for the purpose of expediting and facilitating the settlement of disputes and to overcome delays caused by litigation. They are not enacted to provide a means of creating delay (*Jardine-Matheson Co., Ltd.,* v. *Pacific Orient Co.,* 100 Cal. App. 572 [280 Pac. 697] ; *Zimmerman* v. *Cohen,* 236 N. Y. 15 [139 N. E. 764] ; *Bullard* v. *Morgan H. Grace Co.,* 240 N. Y. 388 [148 N. E. 559]). Section 1282 of the Code of Civil Procedure provides the method by which arbitration may be enforced and enacts that a proceeding may be initiated by the party aggrieved filing a petition for an order directing that arbitration proceed. The default mentioned in section 1282 of the Code of Civil Procedure refers to ''the failure to comply with the agreement to arbitrate''. On the facts of this case there was no showing that respondent was at any time requested to arbitrate or refused to arbitrate before within twenty-four

hours of the actual date of trial. A clause for arbitration is not self-executory but must be enforced by the party seeking the arbitration. Inasmuch as our laws with reference to arbitration are similar to those of New York, New York law on the subject is more than persuasive. In the case of *Bullard* v. *Morgan H. Grace Co., supra,* the court says:

"But neither the agreement to arbitrate nor the submission is self-executory. A party to an arbitration agreement may breach his contract. A remedy is provided in case of his default by Arbitration Law, section 3. A party aggrieved by the failure, neglect or refusal of another to perform, either under a contract or a submission providing for arbitration, may petition the Supreme Court for an order directing that the arbitration proceed. On such an application, the other party may put in issue (a) the making of the contract to arbitrate the questions sought to be submitted to arbitration, or (b) the submission of such questions to arbitration, or (c) the failure to comply therewith . . . It is only when it is found by the court that a written contract of arbitration has been made . . . covering the question sought to be included in the arbitration, and that a party is in default in the performance thereof, that the court will order the parties to the contract or submission to proceed with the arbitration in accordance with the terms thereof."

Appellants did none of the things required by law to enforce their right to arbitrate and on the contrary filed their answer and amended answers in this action. It seems clear to us that if they ever had such right, the facts in the case at bar indicate clearly that it was waived. (*Philip Bauer Co.* v. *Anderson Chemical Co.,* 206 App. Div. 423 [201 N. Y. Supp. 438]; *Zimmerman* v. *Cohen,* 236 N. Y. 15, 18, 19 [139 N. E. 764, 765].)

We find no substance in the point raised by appellants that the amended complaint of respondent did not properly allege the contract between respondent and appellant Harms but was predicated upon a common count in *assumpsit.* The amended complaint alleged that respondent furnished materials to Harms and that Harms used the same, promised and agreed to pay therefor an agreed price, and that the money became due and was not paid. That a contract may be pleaded in its legal effect and need not be set forth *in haec*

*verba* is thoroughly settled. ■ However, if there were any ambiguity or uncertainty by reason of respondent's failure to plead the contract *in haec verba,* such ambiguity and uncertainty was definitely removed by appellants themselves when they filed their amended answer and set forth the contract *in haec verba.* In *Antonelle* v. *Kennedy & Shaw Lumber Co.,* 140 Cal. 309, 321 [73 Pac. 766], it is said:

"Besides, when the legal effect of an instrument is pleaded, and any of its conditions are omitted in the complaint, the omission is cured, if the defendant in his answer sets forth the entire contract."

■ Furthermore, the action was tried upon the theory that respondent was proceeding upon an express contract and under such circumstances it has been held:

"But in any view of the case defendants suffered no injury. The trial was had upon the issues arising out of the contractual relations of the parties, and whether we call the contract an express or an implied one we cannot see that defendants were injured by any variance between averment and proof." (*Gibson* v. *McReynolds,* 175 Cal. 263, 268 [165 Pac. 921, 923].)

■ The finding of the court as to the amount due under the contract by Harms to respondent is amply sustained by the evidence and requires no discussion in detail.

The judgment is affirmed.

Houser, Acting P. J., and York, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 19, 1935.