[Civ. No. 27114. First Dist., Div. One. June 7, 1971.]

CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC., Plaintiff and Respondent, v.
KIRKHAM, CHAON & KIRKHAM, INC., et al., Defendants and Appellants.

**COUNSEL**

Larson & Schultz, Edmund B. Schultz and John W. Larson for Defendants and Appellants.

Heller, Ehrman, White & McAuliffe, William R. Mackey and Stephen V. Bomse for Plaintiff and Respondent.

**OPINION**

**MOLINARI, P. J.**—Defendants appeal from a judgment entered after trial without jury in an action by plaintiff on a public works bond and on a stop notice claim.

The proceedings arise from relations of various parties engaged in the construction of an elementary school known as Valhalla Elementary School in the City of Pleasant Hill. The school was to be, and now is, a part of the Mount Diablo Unified School District (hereinafter the "School District"). Plaintiff was a supplier of materials to one of the defendants, an electrical subcontractor doing business as Walnut Creek Electric, a corporation (hereinafter "Electric"). As the result of the untimely economic

demise of Electric and its inability to pay plaintiff for the material supplied, plaintiff, as principal, brought an action against Hartford Accident & Indemnity Company (hereinafter "Hartford") which had issued a contractor's bond assuring that if the primary contractor, Kirkham, Chaon & Kirkham, Inc., a corporation (hereinafter "Kirkham") and its subcontractors failed to pay for any labor and/or materials used in connection with said school project, Hartford would pay the same to the parties furnishing such labor or materials. By said action plaintiff also sought to enforce a stop notice claim against Kirkham, the School District and various of its officials.[1]

There is no dispute concerning the basic facts.

On or about November 9, 1965, Kirkham entered into a written contract with the School District to construct the aforementioned school. Prior to the commencement of work under such contract, and as required by its terms, Kirkham, as principal, and Hartford, as surety, entered and filed a surety bond in the sum of $325,854 which was executed in accordance with the provisions of former sections 4200 through 4205 of the Government Code.[2] Electric became the electrical subcontractor for electrical work on the school. Thereafter, Electric began and continued to purchase certain electrical fixtures and related supplies from plaintiff up to and including August 30, 1966. The supplies and materials furnished were alleged to have a reasonable worth of $12,519.57. Unable to secure payment, plaintiff, on November 7, 1966, prior to the expiration of the period within which claim of lien must be filed as prescribed by Code of Civil Procedure section 1193.1, subdivision (g),[3] filed with defendants its stop notice and verified statement as provided for by section 1190.1.

On November 16, 1966, Electric filed a voluntary petition in bankruptcy and on November 23, 1966, the School District filed its resolution and certificate of acceptance stating that the general contractor had completed its work on the Valhalla school project on November 22, 1966. Receiving no satisfaction on any of its outstanding claims against Electric, plaintiff,

---

[1]In addition to the above-mentioned defendants, issue was joined against the electrical subcontractor, Walnut Creek Electric, but because of its pending insolvency proceedings, and its clear absence of ability to respond to any judgment, said defendant took no active part in the proceedings, and has filed no notice of appeal in this court.

[2]These sections were repealed in 1969, operative January 1, 1971, and the substance of the matters therein contained is now found in Civil Code sections 3247 and 3248.

[3]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

on April 19, 1967, filed the instant action and stop notice. The court, finding that "said materials were furnished to be used, and the same were actually used, in, upon, for and about the construction of said school . . .," awarded plaintiff the sum of $12,328.09 as the reasonable worth of the materials supplied to defendants.

Defendants' primary contention is that plaintiff failed to produce any competent evidence from which the trier of fact could have determined that the fixtures and related materials supplied by plaintiff to Electric were "actually used" in the construction of the Valhalla Elementary School. In considering this contention we first take cognizance of section 1181, the basic statute providing for mechanic's liens. This statute, in pertinent part, provides as follows: ". . . materialmen . . . furnishing materials *to be used* . . . in, . . . the construction, . . . of, any building, structure, or other work of improvement shall have a lien upon the property upon which they have . . . furnished materials . . . ." (Italics added.)

Cases construing the phrase "to be used" in former section 1183, the predecessor of section 1181, have held that materials must not only be furnished for, or delivered to the site of, the particular building, but must actually be used in the construction in order to sustain a mechanic's lien. (*Silvester* v. *Coe Quartz Mine Co.*, 80 Cal. 510, 513 [22 P. 217]; *Wilson* v. *Nugent,* 125 Cal. 280, 284 [57 P. 1008]; *National Lumber Co.* v. *Ripple,* 166 Cal. 506, 508 [137 P. 236]; *Ensele* v. *Jolley,* 188 Cal. 297, 300 [204 P. 1085]; *Stone* v. *Serimian,* 198 Cal. 520, 523 [246 P. 45]; see *Bennett* v. *Beadle,* 142 Cal. 239, 242 [75 P. 843].) In this state proof of delivery of the materials to the building site does not create a presumption of their use in the improvement,[4] but the materialman must prove that the materials were actually used therein. (*San Pedro Lumber Co.* v. *Kreis,* 111 Cal.App. 466, 468-469 [295 P. 890].)

Adverting to defendants' contention that the court's finding that the materials supplied by plaintiff "were actually used" in the construction of the school is not supported by the evidence, we observe that " ' . . . where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; that we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.' " (*Overton* v. *Vita-Food*

---

[4]In many states proof of delivery of the materials to the building site constitutes prima facie evidence, or creates a presumption, of their use in the improvement. (See cases collected in 39 A.L.R.2d 427-428; 39 A.L.R.2d Later Case Service 793.)

*Corp.,* 94 Cal.App.2d 367, 370 [210 P.2d 757].) "[I]n examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is, under the rule which has always prevailed in this court, to be resolved in favor of the finding." (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 142 [134 P. 1157].) "When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183].)

 We are satisfied from an examination of the record that the findings are amply supported by the evidence. Plaintiff offered into evidence all of Electric's purchase orders for the Valhalla project as well as plaintiff's own invoices showing shipment of goods to the Valhalla jobsite. Although evidence of shipment and delivery of materials to the construction site by itself is not sufficient to support a finding that the materials supplied were actually used in the construction, plaintiff did introduce the direct testimony of a witness,[5] Donald Salvi, who was manager of plaintiff's Concord branch, from which evidence of actual use could have been inferred. Salvi had made a detailed physical inventory of the electrical fixtures after the school had been completed and accepted by the School District. Prior to the testimony of this witness, plaintiff introduced into evidence a certified copy of the Valhalla Elementary School blueprints. Salvi then testified that he had reviewed the school blueprints, including the "electrical-site plan & schedules" and "fixture schedule" in detail, and that subsequent to its completion, he made two visits to the school "primarily to identify the fixtures on the job site." In making his review, Salvi made special reference to the pertinent blueprints as well as Electric's purchase orders and plaintiff's invoices. In response to questions whether he could testify as to how many fixtures were ordered and specified in the plan, and were in place in the school, Salvi responded in the affirmative. Salvi then detailed for the trial court the results of his review and inventory. The essence of this testimony was that the types of fixtures provided for in the blueprints were in the finished school and that these corresponded to the types and amount of fixtures which had been ordered by Electric from plaintiff.

It was not necessary for plaintiff to prevail that it be shown that Salvi

---

[5]Plaintiff also introduced the testimony of another witness whose testimony relates solely to the fact of delivery of the materials to the construction site.

had physically observed all of the materials being actually incorporated into the school building. Nor is Salvi's testimony deficient because, in those instances where the blueprints indicated certain rooms were identical in configuration with respect to the required fixtures, he extrapolated on the basis of his physical examination of a sampling of the identical premises. This testimony went to the weight of the evidence. The lack of direct observation by Salvi of incorporation of the materials into the construction does not in any way detract from the evidentiary force of his correlation between his physical inventory of the fixtures observed at the school after its completion and the purchase orders and invoices that were introduced in evidence. We observe here, that as to the portion of such materials Salvi *was* able to testify from personal observation during construction, that they were incorporated in the school.[6]

With respect to defendants' claim concerning Salvi's limited use of extrapolation in his inventory, we note that the rooms physically examined were not only "typical" of those to which the extrapolation was made on the basis of the blueprints, but were "identical" to the other rooms in which similar fixtures were installed. Moreover, formal acceptance of the completed school by defendant School District impliedly indicates structural conformity to the relevant blueprints.

Defendants also contend that plaintiff's complaint was not timely filed. They argue that section 1197.1, subdivision (a), prohibited plaintiff from filing an action more than 180 days after the last delivery of its labor and materials. Accordingly, defendants assert that since plaintiff's complaint alleged that it furnished materials up to and including August 30, 1966, the filing of the complaint on April 19, 1967 exceeded the 180-day limitation. We have concluded that there is no merit to this argument.

In its complaint plaintiff alleged two theories of recovery. The first was predicated upon a contractor's bond for a public works job; the second, upon a stop notice claim. The purpose of a public works contractor's bond is to give materialmen and laborers who furnish materials for and render services upon public works an additional means of receiving compensation. (*Powers Regulator Co.* v. *Seaboard Surety Co.,* 204 Cal.App.2d 338, 344 [22 Cal.Rptr. 373]; *Pneucrete Corp.* v. *U.S. Fid. & G. Co.,* 7 Cal.App.2d 733, 736-737 [46 P.2d 1000].) At all times pertinent to the instant case actions on such bonds were governed by former Goverment Code sec-

---

[6]The following testimony was adduced on direct examination: "Q. And you saw, at least, some of the goods delivered there at the job site? A. I was present on two different occasions when the merchandise was delivered. Q. Did you ever see Walnut Creek Electric incorporating any of the materials in the job site? A. At various times, yes."

tions 4206 and 4207.[7] Although such an action may be joined with an action upon a stop notice claim (*Adams* v. *Christopher*, 119 Cal.App. 40, 44-45 [5 P.2d 948]), the two are independent and one is cumulative to the other. (Former Gov. Code, § 4207; *Sunset Lumber Co.* v. *Smith*, 95 Cal. App. 307, 312-313 [272 P. 1068].) In section 4207 it was specifically provided that "An action on a bond may be maintained separately from and without the filing of an action against the officer or body by whom the contract was awarded."[8] Under former Government Code section 4206, a suit could be brought by a claimant against the surety on a contractor's bond at any time after the claimant had ceased to perform work or furnish material, or both, and until the expiration of six months after the period in which claims may be filed as provided in secton 1192.1 of the Code of Civil Procedure. The latter section provides generally for the filing of claims within 10 days after the completion of the work or within 10 days after there has been a cessation of labor for 30 days. Under these provisions the action on the contractor's bond was timely filed.

Adverting to the stop notice claim, we observe that section 1197.1 (now Civ. Code, §§ 3144-3147), which formed a part of the general statutory scheme governing the filing of stop notice claims against local public entities such as school districts, at the times involved herein, provided, in pertinent part, as follows: "(a) No action to enforce the payment of any claim, notice of which may be given pursuant to Article 2 [§ 1190.1 providing for stop notices], shall be commenced against the owner, nor against the state or any public board, commission, or officer thereof, nor against any political subdivision of the state or the disbursing officer thereof whose duty is to make payments under provisions of such contract, nor against any of the parties described in subdivision (h) of Section 1190.1, prior to the expiration of the period within which claims of lien must be filed for record, as prescribed by Section 1193.1 of this code, nor shall any such suit be commenced later than 90 days folowing the expiration of such period, *except that if the claim arises out of a work of improvement that is subject to acceptance by a city, county, or other local governmental agency, then suit shall be commenced not less than 90 days nor more than 180 days after the last delivery of materials or performance of work.*" (Italics added.)

Defendants' contention that plaintiff must file its claim on the stop notice within 180 days of plaintiff's last delivery of materials rather than 180 days

---

[7]These sections were repealed in 1969, operative January 1, 1971, and the substance of the matters therein contained is now found in Civil Code sections 3249 and 3250.

[8]Similar language is contained in Civil Code section 3240, the successor statute.

of the completion of the entire project and its acceptance by the local governmental agency is not supported by a reading of the statute. The clear inference to be drawn from the last portion of section 1197.1, subdivision (a), is that the "last delivery of materials or performance of work" relates to the completion of the entire construction project rather than performance by the individual claimant. (See Review of Selected 1965 Code Legislation (Cont.Ed.Bar) pp. 87-88.) The School District filed its resolution and certificate of acceptance reciting that the Valhalla school project was completed on November 22, 1966. Since plaintiff filed its stop notice claim after 90 days and within 180 days of this date, the claim was timely filed.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.