[No. D024620. Fourth Dist., Div. One. Nov. 21, 1996.]

DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS ENFORCEMENT, Plaintiff and Appellant, v. SEABOARD SURETY COMPANY, Defendant and Respondent.

1502

COUNSEL

H. Thomas Cadell, Jr., and Michael S. Villeneuve for Plaintiff and Appellant.

Hillyer & Irwin, Steven S. Owen and Mark G. Budwig for Defendant and Respondent.

## OPINION

**NARES, Acting P. J.**—This case requires determination of the appropriate statute of limitation in an action by the Division of Labor Standards Enforcement of the State of California Department of Industrial Relations (DLSE), on behalf of workers on a public works project (Lab. Code, §§ 96.7, 98.3, subd. (a)[1]), for prevailing wages (§§ 1771, 1774) against the surety furnishing the payment bond required for the project (Civ. Code, §§ 3247, 3248). The trial court ruled the 90-day limitation period in section 1775 applies to bar this action by DLSE against the surety. Thus, the trial court granted the motion of Seaboard Surety Company (Seaboard) for judgment on the pleadings. DLSE appeals from the ensuing judgment.

Concluding the longer limitation period of Civil Code section 3249 applies and this action against the surety for prevailing wages is not barred under the Civil Code section, we reverse. We also determine the doctrine of collateral estoppel does not prevent DLSE from litigating this issue.

### FACTS

The public work in question is known as the Thornton Hospital project, with the University of California, San Diego, as the body awarding the contract to Centex Golden Construction Company (Centex). Seaboard issued a payment bond naming Centex as principal. The bond benefits workers who provided labor on the project.

On May 19, 1994, a notice of completion of the Thornton Hospital project was recorded.

On November 10, 1994, 175 days after the notice of completion was recorded, DLSE filed this action for wages and against the bond, seeking

---

[1]All statutory references are to the Labor Code unless otherwise specified.

Section 96.7 provides, in part: "The Labor Commissioner, after investigation and upon determination that wages or monetary benefits are due and unpaid to any worker in the State of California, may collect such wages or benefits on behalf of the worker without assignment of such wages or benefits to the commissioner."

Section 98.3, subdivision (a), provides in part: "The Labor Commissioner may prosecute all actions for the collection of wages, penalties, and demands of persons who in the judgment of the Labor Commissioner are financially unable to employ counsel and the Labor Commissioner believes have claims which are valid and enforceable."

The Labor Commissioner is the chief of the DLSE. (§§ 79, 82, subd. (b).)

$271,768 in alleged underpayment of prevailing wages to workers on the public works project.[2]

The trial court granted Seaboard's motion for judgment on the pleadings on the principle, "[a] pleading which on its face is barred by the statute of limitations does not state a viable cause of action and is subject to judgment on the pleadings." (*Hunt* v. *County of Shasta* (1990) 225 Cal.App.3d 432, 440 [275 Cal.Rptr. 113], fn. omitted.)

DISCUSSION

I

*Background*

■ As more fully described in *Lusardi Construction Co.* v. *Aubry* (1992) 1 Cal.4th 976, 981, 985-986, 987 [4 Cal.Rptr.2d 837, 824 P.2d 643] (*Lusardi*), the prevailing wage law governs wages and other conditions of employment on public works such as that involved in this case. (*Id.* at p.

---

[2]In pertinent part, the complaint alleges:

"7. Prior to the commencement of this action, the labor Commissioner of California investigated and determined that wages and/or monetary benefits were due and unpaid to the employees of the CONTRACTOR[.] [P]laintiff sues herein for the collection of said wages and monetary benefits, pursuant to the authority vested in it under Labor Code, Sections 96.7, 98.3, 1775, and 1776(f).

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"9. At all times herein mentioned, the laws of the State of California, and in particular Labor Code §§ 1771 and 1774, obligated CONTRACTOR to pay the prevailing wage rate in the locality in which the public works contract is performed for the work herein alleged to have been performed by the employees herein.

"10. During the employment of the employees of CONTRACTOR, said CONTRACTOR failed to pay its employees the full amount of wages and/or monetary benefits due on the project, and as a result of the alleged failure of CONTRACTOR in paying its employees the prevailing wage rates on the project as required under Labor Code §§ 1771 and 1774, plaintiff herein has determined that there is now due, owing and unpaid the amount of $271,767.93 as wages, which sum has not been paid, and the whole thereof remains due, owing and unpaid.

"11. The requirement that the workers employed on a public work be paid the prevailing wage is statutory and applies to all workmen employed directly by the prime CONTRACTOR, as well as workers employed by the subcontractors employed by the prime contractor.

"12. Upon the default of the CONTRACTOR in paying the wages and/or monetary benefits of their employees, defendants SEABOARD SURETY COMPANY, and DOES 1 And 2, as sureties, became obligated to pay the sum of $271,767.93 which sum although demanded, has not been paid, and the whole thereof remains due, owing and unpaid.

"13. This action has been commenced within the period provided under Civil Code § 3249."

The complaint prays, in part, for: "The sum of $271,767.93, plus interest at the legal rate pursuant to Civil Code § 3287, as and against defendants, SEABOARD SURETY COMPANY, and DOES 1 and 2, jointly and severally, on its First Cause of Action."

981.) Public works contracts awarded to private contractors must include stipulations requiring the contractors and subcontractors to pay their employees no less than the applicable prevailing wage rates, as determined by the Director of the Department of Industrial Relations (Director). (§§ 1773.2, 1775; *Lusardi, supra,* 1 Cal.4th at p. 981.) The overall purpose of the prevailing wage law is to protect and benefit employees on public works projects. (1 Cal.4th at pp. 985, 987.)

A contractor for a public works project failing to pay the prevailing rate to its workers is liable for the deficiency and is subject to a statutory penalty. (§ 1775.) Deficiencies and penalties are to be withheld by the awarding body from sums due under the contract. (§ 1727.) If the money due a contractor from an awarding body is insufficient to pay all of the imposed penalties and deficiencies, or if the public works contract does not provide for payments by the awarding body to the contractor, the DLSE is authorized to bring an action to recover the deficiencies due and penalties assessed. (§ 1775; *Lusardi, supra,* 1 Cal.4th at p. 986.)

With respect to the action DLSE is authorized to bring against the contractor for prevailing wage deficiencies and penalties, section 1775 provides in part:

"The contractor shall, as a penalty to the state or political subdivision on whose behalf the contract is made or awarded, forfeit not more than fifty dollars ($50) for each calendar day, or portion thereof, for each worker paid less than the prevailing rates as determined by the director for the work or craft in which the worker is employed for any public work done under the contract by him or her or by any subcontractor under him or her. . . . The difference between the prevailing wage rates and the amount paid to each worker for each calendar day or portion thereof for which each worker was paid less than the prevailing wage rate shall be paid to each worker by the contractor, and the body awarding the contract shall cause to be inserted in the contract a stipulation that this section will be complied with.

"To the extent that there is insufficient money due a contractor to cover all penalties forfeited and amounts due in accordance with this section, or in accordance with Section 1813, and in all cases where the contract does not provide for a money payment by the awarding body to the contractor, the awarding body shall notify the Division of Labor Standards Enforcement of the violation and the Division of Labor Standards Enforcement, if necessary with the assistance of the awarding body, may maintain an action in any court of competent jurisdiction to recover the penalties and the amounts due

provided in this section. *This action shall be commenced not later than 90 days after the filing of a valid notice of completion* in the office of the county recorder in each county in which the public work or some part thereof was performed, or not later than 90 days after acceptance of the public work, whichever last occurs. *No issue other than that of the liability of the contractor for the penalties allegedly forfeited and amounts due shall be determined in the action*, and the burden shall be upon the contractor to establish that the penalties and amounts demanded in the action are not due." (Italics added.)

Since principles of sovereign immunity do not permit liens for persons furnishing labor or supplies on public property, the Legislature has provided stop notice and payment bond remedies for collection of amounts due to such persons. (See *A. J. Setting Co.* v. *Trustees of Cal. Sate University & Colleges* (1981) 119 Cal.App.3d 374, 381 [174 Cal.Rptr. 43]; *Consolidated Elec. Distributors, Inc.* v. *Kirkham, Chaon & Kirkham, Inc.* (1971) 18 Cal.App.3d 54, 60 [95 Cal.Rptr. 673].)

The stop notice provisions (Civ. Code, § 3179 et seq.) protect materialmen and labor claimants by allowing for intercepting funds due from the public agency to the contractor. (*Sunlight Elec. Supply Co.* v. *McKee* (1964) 226 Cal.App.2d 47, 50 [37 Cal.Rptr. 782].)

The payment bond provisions (Civ. Code, § 3247 et seq.) "give to materialmen and laborers who furnish material for and render services upon public works an *additional means of receiving compensation*." (*Pneucrete Corp.* v. *U. S. Fid. & G. Co.* (1935) 7 Cal.App.2d 733, 736-737 [46 P.2d 1000], italics added; see also *Consolidated Elec. Distributors, Inc.* v. *Kirkham, Chaon & Kirkham, Inc.*, *supra*, 18 Cal.App.3d at p. 60; *Powers Regulator Co.* v. *Seaboard Surety Co.* (1962) 204 Cal.App.2d 338, 344 [22 Cal.Rptr. 373].) Although an action on a bond may be joined with an action on a stop notice claim, the two are independent remedies and one is cumulative to the other. (*Consolidated Elec. Distributors, Inc.* v. *Kirkham, Chaon & Kirkham, Inc.*, *supra*, 18 Cal.App.3d at p. 61.) Further, as stated in *Pneucrete Corp.* v. *U. S. Fid. & G. Co.*, *supra*, 7 Cal.App.2d at page 737, "[t]he bond required is not a voluntary bond but a statutory bond [citations], and affords an additional or cumulative remedy." In *Powers Regulator Co.* v. *Seaboard Surety Co.*, *supra*, 204 Cal.App.2d 338, the court points out that as a result of the statutory nature of the bond as a substitute protection for persons in the position of laborers, materialmen and subcontractors (*id.* at pp. 345-348), the bond creates "a primary obligation of the surety company" to all legitimate claims of such persons (*id.* at p. 350), and the surety owes a statutory obligation to such persons that is independent of the terms of any contract (*id.* at pp. 355-356). (See also *Sukut-Coulson, Inc.* v. *Allied Canon Co.* (1978) 85 Cal.App.3d 648, 654-655 [149 Cal.Rptr. 711].)

Referring to the provisions of the Public Works Act first passed in 1919 involving payment bonds, as well as the provisions of the Mechanics Lien Law pertaining to notices of completion and stop notices, many years ago the Supreme Court stated: "Both laws deal with the same specific subject, and are to be construed together. The legislature did not intend to defeat or embarrass the right of a lien claimant by the remedies prescribed, but meant to broaden his remedy. *Two remedies pointing to the same result being open to the claimant, he may pursue either as his interest will be best served.* A provision inserted in the bond by the surety, as here, in an attempt to limit the remedy a mechanic or materialman may choose to elect, would be ineffectual as an invasion of his statutory rights to adopt the remedy provided by law in a proceeding in which liberality of construction is favored." (*Globe Indemnity Co.* v. *Hanify* (1933) 217 Cal. 721, 730 [20 P.2d 689], italics added.)

■ Similarly, *Lusardi, supra*, 1 Cal.4th at page 988, footnote 3, made clear that the remedies under the prevailing wage statutes are not exclusive. *Lusardi* states a feature in the legislative history of the statutory scheme "strongly favors the conclusion that the Legislature intended the contractor's obligation to pay prevailing wages to be both statutory and contractual." (*Ibid.*) After describing the statutory scheme, *Lusardi* concludes the Legislature "viewed contractors and subcontractors as liable *either* for violation of their statutory obligation to pay prevailing wages, *or* for violation of their contractual stipulations to do so. . . . [T]he Legislature no longer intends the statutory remedies to be exclusive." (*Ibid.*, original italics; see also *Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 975 [9 Cal.Rptr.2d 92, 831 P.2d 317] (dis. opn. of Kennard, J.[3]).)

Since the obligation to pay prevailing wages attends all public works projects costing more than $1,000 (§ 1771) and the payment bond requirement applies to all public works involving an expenditure in excess of $25,000 (Civ. Code, § 3247, subd. (a)) and inures to the benefit of those

---

[3]Justice Kennard states: "We held in *Lusardi, supra*, 1 Cal.4th at pages 986-988, that the obligation of a contractor to pay the prevailing wage on a public works project arises separately from statute and from contract. The Legislature has recognized that individuals who are owed unpaid wages by employers have 'valid and enforceable' claims against those employers that they may pursue independently or that the DLSE may pursue on their behalf. (Lab. Code, § 98.3, subd. (a).) And, as we noted in *Lusardi*, the legislative history of the prevailing wage law shows that the Legislature intended remedies against the contractor for violation of the prevailing wage law to be cumulative and nonexclusive. (*Lusardi, supra*, 1 Cal.4th at p. 988, fn. 3.)" (*Aubry* v. *Tri-City Hospital Dist., supra*, 2 Cal.4th at pp. 974-975 (dis. opn. of Kennard, J.), fn. omitted.)

entitled to prevailing wages (Civ. Code, § 3248, subd. (c)), there is no question the payment bond covers the obligation to pay prevailing wages.[4]

## II

DLSE contends the 90-day limitation period of section 1775 has no application to the action on the payment bond; instead, DLSE argues, the limitation period is governed by Civil Code section 3249 which permits an action on the payment bond to be commenced within six months after expiration of the period allowed for filing stop notices.[5] We agree.

In light of the abundance of decisional authority, some of which is cited above in part I, to the effect that the various remedies available to persons who furnish labor or material for public works are cumulative and additional remedies, not exclusive ones, we cannot accept Seaboard's assertion to the contrary. Under the authority of provisions such as sections 96.7 and 98.3 (see *ante*, fn. 1[6]), DLSE has ample authority to bring the action on the payment bond on behalf of the workers whose statutory rights to prevailing wages allegedly have been violated. In this connection, we observe that sections other than just section 1775 spell out the right to prevailing wages. (See, e.g., §§ 1770-1773.2, 1774; *Lusardi, supra,* 1 Cal.4th at pp. 981, 985-989.) Thus, the section 1775 remedy against the contractor does not represent the exclusive means by which DLSE may seek to collect prevailing wages under the prevailing wage law.[7]

---

[4]We emphasize this case pertains only to the obligation to pay prevailing wages. Penalties are not involved.

[5]Civil Code section 3249 reads: "Suit against the surety or sureties on the payment bond may be brought by any claimant, or his assigns, at any time after the claimant has furnished the last of the labor or materials, or both, but must be commenced before the expiration of six months after the period in which stop notices may be filed as provided in Section 3184."

Civil Code section 3184, subdivision (a) provides that for a stop notice to be effective, it must be served before the expiration of 30 days "after the recording of a notice of completion (sometimes referred to in public works as a notice of acceptance) or notice of cessation, if such notice is recorded."

[6]Citing sections 96.7 and 98.3 (*ante,* fn. 1), the dissenting opinion of Kennard, J., in *Aubry* v. *Tri-City Hospital Dist., supra,* 2 Cal.4th at page 975, describes the DLSE a "the assignee of the workers as a matter of law" with respect to the contractor's statutory and contractual obligation to pay workers no less than the prevailing wage.

Having the status of an assignee as a matter of law, DLSE is authorized to pursue the action on the payment bond which is available under Civil Code section 3249 to "any claimant, *or his assigns.*" (Italics added.)

[7]By its terms, section 1775 becomes applicable when DLSE's suit is against the *contractor,* a feature not attending this action. In case of such a suit, of course, section 1775's 90-day limitation period has full force and effect. (See *Kray Cabling Co.* v. *County of Contra* Costa (1995) 39 Cal.App.4th 1588, 1591-1594 [46 Cal.Rptr.2d 674].) In this manner, section 1775 has independent meaning as an alternative remedy to an action against the *surety* as to which the longer limitations period of Civil Code section 3249 applies.

A necessary corollary of this conclusion is that the 90-day limitation for actions under section 1775 does not apply to an action for payment of prevailing wages against the surety on the payment bond. Instead, the limitation period for an action on a payment bond prescribed by Civil Code section 3249 applies. As we have seen (see fn. 5, *ante*), that limitation is six months plus thirty days after the recording of the notice of completion. The present case was filed within this limitation period, and thus was timely.

██ We point out there is no merit to Seaboard's argument that since the 90-day period set forth in section 1775 had run, its obligation on the payment bond was extinguished. It is long established that statutes of limitations are merely statutes of repose which do not operate to extinguish the debt, but merely bar recovery on the debt when properly asserted. (*Carter* v. *Canty* (1919) 181 Cal. 749, 754 [186 P. 346]; *Powell* v. *Petch* (1913) 166 Cal. 329, 331 [136 P. 55]; *Wells, Fargo & Co.* v. *Enright* (1900) 127 Cal. 669, 673-674 [60 P. 439]; *Kays* v. *Bundy* (1949) 92 Cal.App.2d 497, 500 [207 P.2d 113].) More specifically with respect to sureties and principals, the law in this state is " ' "the *obligation of the surety remains notwithstanding the fact that the statute of limitations has run on the obligation of the principal.* [Citations omitted.]" ' " (*Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 636 [147 Cal.Rptr. 486, 581 P.2d 197] (*Hartford*), quoting *Gaffigan* v. *Lawton* (1934) 1 Cal.2d 722, 723-724 [37 P.2d 79], original italics.)

On the basis of this authority, we conclude the running of the section 1775 limitations period could not extinguish Seaboard's obligation on the payment bond.

██ In its petition for rehearing, Seaboard for the first time in these proceedings asserts that Code of Civil Procedure section 359.5 governs the effect on the surety of the expiration of the statute of limitations on the principal's obligation. This section reads:

"If the obligations under a surety bond are conditioned upon performance of the principal, the expiration of the statute of limitations with respect to the obligations of the principal, other than the obligations of the principal under the bond, shall also bar an action against the principal or surety under the bond, unless the terms of the bond provide otherwise."

Seaboard points out there is secondary authority to the effect Code of Civil Procedure section 359.5 overcame the *Hartford* case as applied to both construction sureties and other sureties. (See 3 Witkin, Cal. Procedure (4th ed. 1996) Actions § 506, p. 639.) We have no doubt this is a correct statement as it pertains to obligations under the surety bond "conditioned upon performance of the principal." (Code Civ. Proc., § 359.5.) However,

the quoted phrase arguably refers only to a performance bond. (See Cal. Surety & Fidelity Bond Practice (Cont.Ed.Bar 1969) § 7.1 et seq., p. 61 et seq. (CEB).) Here we deal with a payment bond with respect to which Code of Civil Procedure section 359.5 may leave no application (See CEB, *supra,* § 9.5 et seq., p. 97 et seq.)

However, we are not required to decide whether Code of Civil Procedure section 359.5 applies to a payment bond as well as a performance bond as DLSE points out in its answer to Seaboard's petition, even if Code of Civil Procedure section 359.5 could be viewed as applying to the surety bond here in question, the last phrase of the section, "unless the terms of the bond provide otherwise," would come into play to cause Civil Code section 3249's limitation period to become a term of the bond. This is because "[a] bond given pursuant to a particular statute is deemed to incorporate the statute into the bond." (*Winick Corp.* v. *General Ins. Co.* (1986) 187 Cal.App.3d 142, 148.)

In view of the foregoing considerations, we conclude Code of Civil Procedure section 359.5 has no application to the payment bond here in question. Thus, the *Hartford* rule pertains, and expiration of the limitation period under section 1775 as to the contractor has no bearing on the limitation period applicable to the surety under Civil Code section 3249.

## III

▇ DLSE contends that it is not collaterally estopped from litigating the issue of the proper limitation period by virtue of its having been the losing party in the unpublished decision of Division Two of this district in *Division of Labor Standards Enforcement* v. *Holmes Roofing Co.* (Mar. 24, 1981) E023194 (nonpub. opn.) (*Holmes*).[8] ▇ The rule is: "The doctrine of collateral estoppel precludes relitigation of an issue previously adjudicated if: (1) *the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated*; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit. (*People* v. *Sims* (1982) 32 Cal.3d 468, 484 [186 Cal.Rptr. 77, 651 P.2d 321].)" (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910 [226 Cal.Rptr. 558, 718 P.2d 920], italics added.)

▇ Since the identical issue was not necessarily decided in *Holmes*, the first element for applying collateral estoppel is missing. Accordingly, we conclude DLSE is not precluded from litigating the Civil Code section 3249 limitation issue in this case.

---

[8]An unpublished opinion may be cited and relied on "when the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel." (Cal. Rules of Court, rule 977(b)(1).)

In *Holmes, supra*, E023194, the notice of completion on the public work in question was recorded October 11, 1978, some 10 months before the action was filed, on July 16, 1979. (*Ibid.*) Since DLSE's action against the surety in *Holmes* was in fact untimely under both the 6-month-plus-30-day limitation in Civil Code section 3249, and the 90-day limitation of section 1775, the court's ultimate decision against DLSE on the basis of the limitation bar was correct.

The surety company defendant in *Holmes* argued DLSE's action on the payment bond for the public work in question was "barred by the six-month limitation prescribed by section 3249 of the Civil Code which deals expressly with actions against a surety on its payment bond brought either by a claimant or his assignee." (*Holmes, supra*, E023194.)[9] However, the Court of Appeal did not address this issue. Instead, the *Holmes* court decided in favor of the surety on the basis that the principal on the bond, the contractor Holmes, was exonerated by virtue of the running of the 90-day limitation period of section 1775, which represented DLSE's exclusive remedy. Thus, *Holmes* determined the liability of the surety was extinguished. (*Holmes, supra*, E023194.)

We set forth the pertinent rationale of *Holmes* as follows:

"DLSE argues that we should disregard the plain language of section 1775 and import a common-law remedy under which it could invoke a four-year statute of limitations because its action is to enforce as assignee the supposed third-party beneficiary rights of Holmes' employees. *This raises the question of whether section 1775 contains the exclusive remedy available either to DLSE or its assignors in pursuing the alleged breach of Holmes' obligation to pay wages at the prevailing rates.*

". . . If there is no repugnancy between the common law and the statute, and it does not appear that the Legislature intended in its enactment to cover the entire subject matter field involved, then the common law and its applicable remedies will survive and will figure in deciding the case. [Citations.]

"However, where the Legislature has created a statutory obligation nonexistent at common law, i.e., as here the duty to pay prevailing rates of

---

[9]In *Holmes*, DLSE argued three theories concerning the appropriate limitation period: (1) DLSE, as assignee of the workers on the project, was prosecuting the latter's rights as third party beneficiaries under the written roofing contract and as such was proceeding under a four-year statute of limitations; (2) DLSE had sued as assignee to enforce statutory rights arising under the Labor Code and hence was proceeding under a three-year statute of limitations; and (3) DLSE, as assignee, was enforcing the oral contracts of employment between Holmes Roofing Company, Inc., and its employees, and hence was entitled to the benefit of a two-year statute of limitations. (*Holmes, supra*, E023194.)

wages on public works projects as they are determined by the Director of Industrial Relations, and the Legislature has further prescribed a special statute of limitations which applies to enforcement of that obligation, it follows that any move to import the common law in aid of efforts at such enforcement must be proscribed. In a far less stringent factual situation, the court in *People* v. *Black* ([1931)] 114 Cal.App. 468, 300 P. 43, said, 'Where the legislature has provided a statutory remedy which supplants in whole or in part a corresponding common-law remedy and has appended thereto a statute of limitations different from that which governs the common-law remedy, there is presented the situation of a conflict between the common law and the statute, in which case the latter must prevail.' (*Id.* at p. 472, 300 P. 43, citing *People* v. *Reid* [(1924)] 195 Cal. 249, 257, 232 P. 457 [36 A.L.R.1435], revd. on other grounds *People* v. *Hutchinson* [(1969)] 71 Cal.2d 342, 78 Cal.Rptr. 196, 455 P.2d 132.)

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . [I]f DLSE were permitted to pursue its third-party beneficiary theory, there would never be a case in which the 90-day limitation would apply. Thus, *we hold that the Legislature intended section 1775 to provide the exclusive remedy for enforcement of the obligation here involved and that the 90-day time period within which civil actions for such enforcement must be commenced applies.* Any other conclusion would ignore the legislative mandate and the plain language of the statute.

". . . [I]t should be enough to state that [the surety] is exonerated because 'the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal. . . .' (Civ. Code, § 2809; see *U.S. Leasing Corp.* v. *DuPont* [(1968)] 69 Cal.2d 275, 290, 70 Cal.Rptr. 393, 444 P.2d 65.)

"DLSE nevertheless argues that the running of the statute as to the principal does not exonerate the surety, citing *Regents of the University of California* v. *Hartford Acc. & Indem. Co.*, 21 Cal.3d 624, 639, 147 Cal.Rptr. 486, 581 P.2d 197. An analysis of *Hartford* makes clear, however, that its holding does not deprive [the surety] of the benefit and protection of the 90-day limitation period found in section 1775.

"*Hartford* involved a typical *procedural* type statute of limitations, i.e., Code of Civil Procedure section 337.15. As such it was described by the *Hartford* court as 'not part of a statute creating a new substantive liability, but . . . codified in that portion of the Code of Civil Procedure which sets out procedural limitations on the commencement of common law actions.' (*Id.* at p. 640, 147 Cal.Rptr. 486, 581 P.2d 197.)

"However, unlike the statute considered in *Hartford*, section 1775 is part of a comprehensive statutory scheme creating a totally new substantive

liability devolving upon public works contractors and, necessarily, their sureties. Witness that it is not codified as part of the Code of Civil Procedure providing limitations upon the commencement of common-law actions. As stated by Witkin, 'If the Legislature creates a right or liability unknown at common law and, in the same statute, fixes a limitation period, the time provision is usually considered substantive.' (2 Witkin, Cal. Procedure (2d ed. 1970) § 232, p. 1089.)

". . . . . . . . . . . . . . . . . . . . . . .

"In matters of substance, . . . by reason of section 2809 of the Civil Code . . . the period of limitations in such statutes [as section 1775] shall be construed to extend also to sureties unless the latter are expressly excluded. . . ." (*Holmes, supra,* E023194, italics added.)

It is noteworthy not only that *Holmes* did not address the Civil Code section 3249 contention, but that it applied an exclusive remedy rationale that is since discredited by *Lusardi, supra,* 1 Cal.4th at page 988, footnote 3, and no longer adhered to by the same court which decided *Holmes.* (See *Tippett* v. *Terich* (1995) 37 Cal.App.4th 1517, 1532 [44 Cal.Rptr.2d 862] ["We . . . reject defendants' initial contention that section 1775 provides an exclusive remedy for violations of the prevailing wage laws."].) We also observe the citation in *Holmes* of *U. S. Leasing Corp.* v. *duPont* (1968) 69 Cal.2d 275, 290 [70 Cal.Rptr. 393, 444 P.2d 65], concerning exoneration of the surety by extinguishment of the principal's obligation, did not express recognition that this case was viewed to be "of little relevance" in *Hartford, supra,* 21 Cal.3d at page 636, footnote 4, because it did not involve a statute of limitations issue.

We conclude the principle of collateral estoppel does not preclude DLSE's assertion of the Civil Code section 3249 limitation issue in this case.

## HOLDING

DLSE was entitled to pursue the additional, cumulative and nonexclusive remedy of suit on the payment bond within the period of limitation prescribed in Civil Code section 3249, six months, thirty days after the recording of the notice of completion. Since DLSE timely filed this lawsuit against the surety, the judgment on the pleadings was improperly granted.

## DISPOSITION

Judgment reversed. DLSE shall recover its costs on appeal.

Haller, J., and McDonald, J., concurred.

A petition for a rehearing was denied December 20, 1996, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied March 19, 1997.