[No. A105650. First Dist., Div. Two. Feb. 23, 2005.]

N.V. HEATHORN, INC., Plaintiff and Appellant, v.
COUNTY OF SAN MATEO, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.C.

## COUNSEL

Stubbs & Leone and Gregory E. Stubbs for Plaintiff and Appellant.

Farella Braun & Martel and Alan E. Harris, Bridget K. Kaman and Carl E. Switzer for Defendant and Respondent.

## OPINION

## RUVOLO, J.—

### I.

#### INTRODUCTION

In this action, plaintiff N.V. Heathorn, Inc. (Heathorn), an unpaid subcontractor on a public project, sought to hold defendant County of San Mateo (the County) liable after it discovered that the County failed to obtain a payment bond from the bankrupt general contractor as required by Civil Code section 3247. Heathorn appeals from a judgment of dismissal entered after the trial court sustained the County's demurrer without leave to amend. We reverse, finding the injury resulting from a public entity's failure to discharge its statutory duty to obtain a payment bond from the original contractor on a public project qualifies as an "injury" to support a cause of action under the Government Tort Claims Act. (See Gov. Code, § 815.6.)

### II.

#### FACTS AND PROCEDURAL HISTORY

Because this is an appeal from a judgment of dismissal sustaining a demurrer without leave to amend, we accept as true all properly pleaded

factual allegations in the complaint other than contentions, deductions, or conclusions of fact or law. (*White v. Davis* (1975) 13 Cal.3d 757, 765 [120 Cal.Rptr. 94, 533 P.2d 222]; *Serrano v. Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].)

The operative complaint alleges that on or about January 19, 1999, Heathorn and Nielsen Dillingham Builders, Inc. (NDBI) entered into a written agreement, effective December of 1998, whereby Heathorn would provide labor and materials for a work of improvement known as the San Mateo County Health Center (County Health Center). At the time Heathorn entered into a contract with NDBI, NDBI was under contract with the County for the overall construction of the County Health Center and was "acting in the capacity of a general contractor on a public works project."

Heathorn contends that on July 27, 2001, NDBI breached the above-described contract and owed Heathorn $423,890.11, plus interest, for the work Heathorn performed on the project. On July 31, 2001, Heathorn filed this action against NDBI to recover the amount it claims it was owed.[1] Heathorn then commenced discovery.

In January 2003, NDBI filed for chapter 11 bankruptcy protection, terminating its contractual obligation to pay Heathorn the unpaid sums due under the contract. In the course of discovery, Heathorn learned that the County had not required NDBI to post a payment bond for the project as required by Civil Code section 3247. Because the County failed to obtain the statutory payment bond from NDBI, which was required as a condition of awarding the contract, Heathorn was deprived of a potential payment source.

Heathorn was allowed to add the County as a defendant and to amend its complaint to allege a new cause of action for breach of the County's mandatory duty to require its general contractor, NDBI, to obtain a payment bond under Civil Code section 3247. On February 20, 2003, Heathorn submitted a claim to the County on account of the damages it sustained by virtue of the unbonded bankruptcy of NDBI. On or about March 25, 2003, the County issued its rejection of Heathorn's claims.

The County interposed a general demurrer based upon two grounds. The first ground was that "Heathorn's inability to collect money due and owing it

---

[1] In its original complaint filed on July 31, 2001, Heathorn sought to recover $262,000, the contract amount it alleged it was owed. In its amended complaint, Heathorn inexplicably increased its alleged outstanding contract balance to $423,890.11.

on a public work of improvement from a statutory payment bond does not give rise to an 'injury' under the Government Tort Claims Act." The second ground was that Heathorn's cause of action against the County was time-barred. After giving Heathorn an opportunity to amend its complaint, the trial court sustained the demurrer on the first ground without leave to amend. The court found it unnecessary to address the second ground of the demurrer. After the court entered judgment in favor of the County, Heathorn filed this timely appeal.

## III.

### Discussion

### A. Standard of Review

■ "In reviewing the sufficiency of the complaint against the . . . [County's] demurrer, we must treat the demurrer as admitting all allegations of the complaint as true. . . . [I]t is settled law that in evaluating the sufficiency of a complaint against a demurrer a court will consider matters that may be judicially noticed . . . . [¶] 'On demurrer, it is not the function of a trial court, or of this court, to speculate on the ability of a plaintiff to support, at trial, allegations well pleaded.' (*Meyer v. Graphic Arts International Union* (1979) 88 Cal.App.3d 176, 179 [151 Cal.Rptr. 597].) As a reviewing court, we are not bound by the construction of the pleadings by the trial court, but we make our own independent judgment of the sufficiency of the complaint. (*Miller v. Bakersfield News-Bulletin, Inc.* (1975) 44 Cal.App.3d 899, 901 [119 Cal.Rptr. 92].)" (*Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1521 [37 Cal.Rptr.2d 810]; see also *Adelman v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 352, 359 [108 Cal.Rptr.2d 788].)

Consequently, for purposes of analyzing Heathorn's appeal from the County's successful demurrer, we will accept as true Heathorn's allegations that NDBI was a general contractor, Heathorn was its subcontractor, and that Civil Code section 3247 required NDBI to file a payment bond with the County for the project at issue. Any disputes on these factual allegations are premature, and will have to await further court proceedings.

### B. Does the Government Tort Claims Act Authorize a Cause of Action Against a Public Entity for Failure to Secure a Payment Bond?

■ The parties acknowledge the general rule that all government tort liability in California must be based on statute. (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 980 [42 Cal.Rptr.2d 842, 897 P.2d 1320].) Under Government

Code section 815.6, "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (See generally *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498–499 [93 Cal.Rptr.2d 327, 993 P.2d 983].)

■ The statutory provisions cited in Heathorn's complaint clearly establish a statutory duty upon a public body, such as the County, to secure a payment bond under the circumstances alleged in Heathorn's complaint. Specifically, Civil Code section 3096 defines "payment bond" as "a bond with good and sufficient sureties that is conditioned for the payment in full of the claims of all claimants and that also by its terms is made to inure to the benefit of all claimants so as to give these persons a right of action to recover upon this bond in any suit brought to foreclose the liens provided for in this title or in a separate suit brought on the bond. . . ." Civil Code section 3247 requires a payment bond as a condition of being awarded a contract by a public entity. It provides in relevant part as follows: "(a) Every original contractor to whom is awarded a contract by a public entity, except as provided in subdivision (d) of Section 7103 of the Public Contract Code, involving an expenditure in excess of twenty-five thousand dollars ($25,000) for any public work shall, before entering upon the performance of the work, file a payment bond with and approved by the officer or public entity by whom the contract was awarded." ■ Civil Code section 3251 makes it illegal for a public entity to pay a contractor unless a payment bond is filed.

■ As we have seen, "[w]hen an enactment establishes a mandatory governmental duty and is designed to protect against the particular kind of injury the plaintiff suffered, [Government Code] section 815.6 provides that the public entity 'is liable' for an injury proximately caused by its negligent failure to discharge the duty." (*Haggis v. City of Los Angeles, supra*, 22 Cal.4th at p. 499.) The allegations in Heathorn's complaint serve as a predicate for liability under Government Code section 815.6. Heathorn's fourth cause of action alleges that the County breached a statutory obligation established by the Labor Code to assure that NDBI secured a payment bond. Heathorn goes on to allege that "[a]s a result of the County's failure to require that NDBI post a payment bond as required by statute, the obligations of NDBI to pay its sub-contractors is not secured by a bond as required by

law and plaintiff has been injured because it cannot collect from [NDBI] any of its unpaid contract payments, interest, penalties, attorneys' fees and the like."

■ The County counters these assertions by arguing that what is lacking in this case is an allegation setting forth an "injury" as defined by the Government Tort Claims Act. As we have seen, section 815.6 imposes liability only "for an injury" caused by the failure of a public entity to discharge its statutory duty. The definition of "injury" for purposes of section 815.6 is set forth in Government Code section 810.8. As explained by the Supreme Court in *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962 [9 Cal.Rptr.2d 92, 831 P.2d 317] (*Aubry*): "For purposes of the Tort Claims Act, injury is defined as 'death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, *of such nature that it would be actionable if inflicted by a private person.*' (Gov. Code, § 810.8, italics added.)" (*Id.* at p. 968.) The Law Revision Commission comment to Government Code section 810.8's definition of "injury" states, in part: "The purpose of the definition is to make clear that public entities and public employees may be held liable *only for injuries to the kind of interests that have been protected by the courts in actions between private persons.*" (Cal. Law Revision Com. com. 32 West's Ann. Gov. Code (1996 ed.) foll. § 810.8, p. 155, italics added.)

In ruling on demurrer, the trial court held that the County's failure to perform its mandatory duty of requiring NDBI to provide a payment bond and the resulting damage that Heathorn incurred when NDBI declared bankruptcy is the not the type of "injury" that supports a cause of action based on Government Code section 815.6. Specifically, the court held that Heathorn "had not lodged or pleaded a valid government tort claim against [the County] because [Heathorn's] alleged injury claim against [the County] could not be asserted against a private person."

In so ruling, the trial court specifically relied upon *Aubry, supra,* 2 Cal.4th 962. In *Aubry*, the Supreme Court considered whether a public hospital district could be held liable under Government Code section 815.6 for not requiring its contractor to pay the prevailing wage required by the Labor Code for public works projects. The court noted that under the Government Tort Claims Act, " 'public entities and public employees may be held liable

*only* for injuries to the kind of interests that have been protected by the courts *in actions between private persons.' . . ."* (*Aubry, supra,* at p. 968, quoting Cal. Law Revision Com. com., Deering's Ann. Gov. Code (1982 ed.), § 810.8, p. 125.) Because a claim for prevailing wages is not an injury that could exist absent the public entity's involvement as the awarding body, the court held that Government Code section 815.6 could not support such a claim against the public entity.

The court explained its holding as follows: "Here, the [Division of Labor Standards Enforcement] alleges that as a result of the [public entity's] failure to perform its mandatory duties, the workers were paid less than the prevailing wage *while engaged on a public work.* This injury is one which by its very nature could not exist in an action between private persons; if the defendant awarding body were not a public entity, there would be no injury. As a result, the injury alleged in this case is not included within the Tort Claims Act's definition of injury. Accordingly, the [public entity] is not subject to liability under Government Code section 815.6 for any failure to carry out its responsibilities under the Labor Code's prevailing wage provisions." (*Aubry, supra,* 2 Cal.4th at p. 968.)

In mounting the successful argument on demurrer below, the County claimed the rationale underlying *Aubry* should apply equally to the present case: "If the County were not a public entity but a private person, Heathorn could not maintain a cause of action against the County for the injuries arising from the failure to obtain a payment bond that is only required on public works of improvement, just as two private parties could not sue each other for failure to pay prevailing wages required only on public jobs."

■ As we have seen, the basic rule of public entity liability is that public entities will be held liable for "*injuries to the kind of interests* that have been protected by the courts in actions between private persons." (Cal. Law Revision Com. com., *supra,* foll. Gov. Code, § 810.8, italics added.) We thus look to the law governing private parties to determine if the injury on which Heathorn's fourth cause of action is based—being deprived of compensation against a defaulting general contractor—is an injury "to the kind of interests that have been protected by the courts in actions between private persons." (*Ibid.*)

As Heathorn emphasizes, "the lien rights of those who provide labor and materials is protected through constitutional mandate in both the public and private spheres." Our state Constitution guarantees that "laborers of every

class[] shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens." (Cal. Const., art. XIV, § 3.) In carrying out this statutory mandate, Civil Code section 3110 provides that "all persons and laborers of every class performing labor upon or bestowing skill or other necessary services on . . . a work of improvement shall have a lien upon the property upon which they have bestowed labor . . . for the value of such labor done . . . whether done . . . at the instance of the owner or of any person acting by his authority or under him as contractor or otherwise."

■ The "mechanic's lien law implements our state's constitutional mandate to protect 'laborers of every class' and allow them to recover their entire compensation, regardless of the form the compensation takes. [Citations.]" (*Betancourt v. Storke Housing Investors* (2003) 31 Cal.4th 1157, 1174 [8 Cal.Rptr.3d 259, 82 P.3d 286].) Our Supreme Court has noted, " 'The mechanic's lien is the only creditors' remedy stemming from constitutional command and our courts "have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen." [Citation.]' [Citation.]" (*Wm. R. Clarke Corp. v. Safeco Ins. Co.* (1997) 15 Cal.4th 882, 889 [64 Cal.Rptr.2d 578, 938 P.2d 372].)

■ However, "[u]nder the principle of sovereign immunity, mechanics' liens may not be asserted on government projects. . . . The only remedies available on public works are stop notices (Civ. Code, §§ 3179–3214) and actions on public works payment bonds (Civ. Code, §§ 3247–3252)." (*Liton Gen. Engineering Contractor, Inc. v. United Pacific Insurance* (1993) 16 Cal.App.4th 577, 584 [20 Cal.Rptr.2d 200]; see Civ. Code, § 3109.)

■ Importantly, "the payment bond is the practical substitute for the mechanic's lien in the public works context when a stop notice is inadequate because insufficient funds remain to be paid by the awarding body." (*Department of Industrial Relations v. Fidelity Roof Co.* (1997) 60 Cal.App.4th 411, 423 [70 Cal.Rptr.2d 465]; see *Washington Internat. Ins. Co. v. Superior Court* (1998) 62 Cal.App.4th 981, 986 [73 Cal.Rptr.2d 282].) ■ "No lien being available to those who perform labor or furnish material on public works [citation], the provisions of the Public Works Act requiring a bond were obviously enacted to create a fund in lieu of the building or work itself against which materialmen and laborers might proceed as an additional and contemporaneous remedy. The bond required is not a voluntary bond but a statutory bond [citations], and affords an additional or cumulative remedy. [Citation.]" (*Pneucrete Corp. v. U.S. Fid. & G. Co.* (1935) 7 Cal.App.2d 733, 737 [46 P.2d 1000].)

In view of the foregoing considerations, we conclude the court below erred in holding that *Aubry* controlled Heathorn's claims against the County. As Heathorn persuasively argues, "[s]ince mechanics liens can be enforced to provide payment security in actions between private persons and since the public works payment bond is the equivalent of a mechanics lien, the loss of payment security suffered by Heathorn for lack of a payment bond in this instance is an injury to 'the types of interest that are protected in actions between private persons . . . .' " (Quoting *Aubry*, *supra*, 2 Cal.4th at p. 970.) Thus, the situation in this case is wholly unlike that in *Aubry*, where no right to be paid prevailing wages existed in the private sphere.

We also agree with Heathorn that the more pertinent case appears to be *Walt Rankin & Associates, Inc. v. City of Murrieta* (2000) 84 Cal.App.4th 605 [101 Cal.Rptr.2d 48] (*Rankin*), because it specifically addresses the statutory provisions germane to this case. In *Rankin*, the City of Murrieta (City) entered into a general contact with KLM Engineering (KLM) for the construction of a playground park. "As part of the bid solicitation process and the award of the contract, KLM was required under [Civil Code] sections 3247 and 3248 to provide a payment bond to the City." (*Id.* at p. 610.) KLM obtained the bond and the City approved the bond. (*Id.* at pp. 610–611.) After being awarded the contract, KLM subcontracted with Rankin to supply and install the playground equipment at the park. (*Id.* at p. 611.) Rankin completed the project and demanded payment from KLM pursuant to its subcontract in the amount of $100,514. (*Ibid.*)

KLM failed to make payment, which caused Rankin to initiate a statutory stop notice procedure.[2] (*Rankin*, *supra*, 84 Cal.App.4th at p. 611.) Pursuant to the stop notice, the City withheld remaining funds owed KLM to pay Rankin, which amounted to $63,000. Rankin's demands under the payment bond to obtain the $37,514 balance owed under the subcontract with KLM were unsuccessful. An investigation by Rankin revealed the surety was not licensed in California and was effectively a fraudulent entity.

Unable to collect the balance owed, Rankin sued the City under Government Code section 815.6 for violating its mandatory duty to determine whether the surety providing the payment bond was an admitted surety

---

[2] In seeking to distinguish *Rankin* from the instant case, the County points out that Heathorn "never filed a stop notice or pursued a stop notice enforcement action against the County in an effort to collect its alleged outstanding contract balance from the County." The County claims we should not countenance Heathorn's "diliatory actions in failing to abide by the legal remedy that was available to it to collect its alleged outstanding contract balance." The filing of a stop notice is not a condition precedent to suing the surety on the payment bond. (Civ. Code, § 3250; see *Consolidated Elec. Distributors, Inc. v. Kirkham, Chaon & Kirkham, Inc.* (1971) 18 Cal.App.3d 54, 61–62 [95 Cal.Rptr. 673].)

insurer under the payment bond statutes and the Bond and Undertaking Law. (*Rankin, supra,* 84 Cal.App.4th at p. 612.)

The City and Rankin stipulated to the above facts and presented to the trial court the single issue of whether the City had a duty "to require a surety providing a payment bond to be an admitted surety insurer or to confirm the solvency of the surety." (*Rankin, supra,* 84 Cal.App.4th at p. 612.) The trial court concluded the City did not have such a duty. The Court of Appeal disagreed. According to the Court of Appeal, if the City had "properly determined" the surety was not an admitted surety insurer, it would have rejected the surety. (*Id.* at p. 628.) "[B]ecause the City did not comply with its duty to determine whether [the surety] was an admitted surety insurer, its breach of that duty proximately resulted in Rankin's injuries, i.e., nonpayment of the remainder due under its subcontract with KLM." (*Id.* at p. 628.) The Court of Appeal held that in failing to discharge its mandatory duty, the City was liable under Government Code section 815.6.[3]

 The result reached in *Rankin* has important implications for the instant case. In light of *Rankin,* to hold in favor of the County in this case would result in the anomalous situation where a public entity that eschewed its statutory duties and failed to secure any payment bond would be better off, in terms of potential liability, than a public entity that discharged its statutory duties and secured the payment bond without investigating the condition of the surety. This result would not only create a discordance in the law but would defeat the obvious purpose of the payment bond statutes of providing a mechanism for securing payment to those furnishing labor or materials on public works projects. For the foregoing reasons, we reverse, finding the injury resulting from a public entity's failure to discharge its statutory duty to obtain a payment bond from the original contractor, on a public work of improvement, qualifies as an "injury" to support a cause of action under Government Code section 815.6.

### C. Did Heathorn Fail to File a Timely Claim?*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[3] In a subsequent case, the court that decided *Rankin* acknowledged that "[i]n arriving at this conclusion, we did not discuss *Aubry* but focused on the duty imposed upon the public entity under Civil Code sections 3247 and 3248 and the bonds and undertakings law." (*Landeros v. Department of Corrections* (2002) 99 Cal.App.4th 271, 275 [120 Cal.Rptr.2d 867], fn. omitted.)

*See footnote, *ante,* page 1526.

## IV.

### Disposition

The judgment is reversed. Costs on appeal are awarded to Heathorn.

Kline, P. J., and Lambden, J., concurred.